No. 23-1918

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____


STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff-Appellee


v.


MICHAEL ANGELO, Defendant-Appellant


ORTHOPEDIC, P.C., et al., Defendants

_____

On Appeal from the United States District Court
For Eastern District of Michigan, Southern Division
Hon. Robert H. Cleland
19-10669

_____


BRIEF OF APPELLANT

_____

SHEREEF H. AKEEL (P54345)
ADAM S. AKEEL (P81328)
SAMUEL R. SIMKINS (P81210)
EMAD R. HAMADEH (P86849)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595

shereef@akeelvalentine.com
adam@akeelvalentine.com
sam@akeelvalentine.com
emad@akeelvalentine.com
*Counsel for Defendant-Appellant*

## ORAL ARGUMENT REQUESTED

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 6th Cir. R.26.1, Appellant makes the following disclosure:

1.　Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

　　Answer: No.

2.　Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

　　Answer: No.

Dated: December 11, 2023

　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　By: */s/ Shereef H. Akeel*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ............................................. xi

STATEMENT OF JURISDICTION....................................................................... xi

ISSUES PRESENTED........................................................................................... xii

STATEMENT OF THE CASE...............................................................................1

SUMMARY OF ARGUMENT ............................................................................13

ARGUMENT ......................................................................................................14

  I.    STANDARD OF REVIEW .........................................................................14

  II.   THE   DISTRICT   COURT   ERRED   BY   FINDING   THAT   THE
         ENFORCEMENT PROCEEDINGS QUALIFY FOR COSTS/FEES UNDER
         THE TERMS OF THE SETTLEMENT AGREEMENT..............................15

    A. The Enforcement *Proceedings* Before the District Court Do Not Constitute
       an *Action* to Enforce the Terms of the Settlement Agreement......................16

    B. Paragraphs 25 and 14 of the Settlement Agreement Do Not Permit State
       Farm to Recover Any Costs or Fees Arising from the Enforcement
       *Proceedings* Before the District Court ..........................................................22

    C. The Proceedings Before the District Court Also Do Not Qualify Under
       Paragraph 3 of the Settlement Agreement .....................................................28

      1.   Recovery of Costs of Enforcement is Controlled by the Specific
          Provisions in Paragraphs 25 and 14 .......................................................28

      2.   State Farm's Costs From Its Enforcement Motions Are Not Sums
          Incurred to Obtain Dismissal of the *Qui Tam* Action ..............................30

  III.   STATE FARM IS NOT THE PREVAILING PARTY.................................31

  IV.   ENFORCING PARAGRAPH 3 TO INDEMNIFY STATE FARM FOR
         COSTS, FEES, AND LIABILITIES FROM DEFENDING THE *QUI TAM*
         ACTION DEFIES PUBLIC POLICY .........................................................36

    A. The District Court's Order Conflicts with the Public Policy to Encourage
       Whistleblowing ..............................................................................................38

B. The District Court's Order Conflicts with the Public Policy to Deputize Relators and Encourage Fulsome Private Prosecution ..................................40

C. The District Court's Order Conflicts with the Public Policy to Protect Whistleblowers ..............................................................................................44

D. The District Court's Order Conflicts with the Public Policy to Punish FCA Defendants and Deter Future Fraud ...............................................................46

CONCLUSION ........................................................................................................48

CERTIFICATE OF COMPLIANCE .......................................................................49

ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .........................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*,
99 F.3d 795 (6th Cir. 1996) ................................................................. 20

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
856 F.3d 696 (9th Cir. 2017) ............................................................... 46

*Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l., Ltd.*,
556 F.3d 459 (6th Cir. 2009) ............................................................... 15

*Bamerilease Cap. Corp. v. Nearburg*,
958 F.2d 150 (6th Cir. 1992) ............................................................... 16

*Blackburn v. Oaktree Cap. Mgmt., LLC*,
511 F.3d 633 (6th Cir. 2008) ............................................................... 18

*Buckhannon Board & Care Home, Inc., v. W. Va. Dep't of Health & Human*,
532 U.S., 598 (2001) ............................................................... 16, 31, 33

*Chambers v. Ohio Dep't of Hum. Servs.*,
273 F.3d 690 (6th Cir. 2001) ............................................................... 34

*Chattanooga-Hamilton Cnty. Hosp. Auth. v. Xerox Corp.*,
2017 WL 2637745 (E.D. Tenn. June 19, 2017) ................................... 43

*Citizens Ins. Co. of Am. v. Juno Lighting, Inc.*,
247 Mich. App. 236 (2001) ................................................................. 35

*Cook Cnty. v. U.S. ex rel. Chandler*,
538 U.S. 119 (2003) ...................................................................... 43, 47

*CRST Van Expedited, Inc., v. E.E.O.C.*,
578 U.S. 419 (2016) ............................................................................ 31

*DeLeon v. City of Ecorse*,
2007 WL 2259331 (E.D. Mich. Aug. 3, 2007) ................................... 35

*Epps v. 4 Quarters Restoration LLC*,
498 Mich. 518 (2015) ......................................................................... 18

*Farrar v. Hobby*,
506 U.S. 103 (1992) .................................................................. 34, 35, 36

*Fox v. Detroit Trust Co.*,
285 Mich. 669 (1938) ......................................................................... 20

*Gallo v. Moen Inc.*,
813 F.3d 265 (6th Cir. 2016) ............................................................... 26

*Glaske v. Indep. Bank Corp.*,
2016 WL 298986 (Mich. Ct. App. Jan. 21, 2016) .............................. 29

*Hewitt v. Helms*,
   482 U.S. 755 (1987) ........................................................................ 34, 36

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
   520 U.S. 939 (1997) ................................................................................ 42

*Imwalle v. Reliance Med. Prods., Inc.*,
   515 F.3d 531 (6th Cir. 2008) .................................................................. 14

*In re Commonwealth Cos., Inc.*,
   913 F.2d 518 (8th Cir. 1990) .................................................................. 48

*In re Smith Trust*,
   480 Mich. 19 (2008) ................................................................................ 22

*Info-Hold, Inc. v. Sound Merch., Inc.*,
   538 F.3d 448 (6th Cir. 2008) .................................................................. 14

*Johnston v. Miller*,
   326 Mich. 682 (1950) .............................................................................. 20

*JPMorgan Chase Bank, N.A. v. Winget*,
   510 F.3d 577 (6th Cir. 2007) .................................................................. 15

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ................................................................................ 25

*Klapp v. United Ins. Grp. Agency, Inc.*,
   468 Mich. 459 (2003) .............................................................................. 24

*Kopf v. Bolser*,
   286 Mich. App. 425 (2009) ..................................................................... 21

*Kulak v. City of Birmingham*,
   2006 WL 954178 (Mich. Ct. App. Apr. 13, 2006) ............................... 18

*Letherer v. Alger Grp., LLC*,
   328 F.3d 262 (6th Cir. 2003) .................................................................. 18

*McQueary v. Conway*,
   614 F.3d 591 (6th Cir. 2010) ............................................................ 32, 35

*Miller v. Holzmann*,
   575 F. Supp. 2d 2 (D.D.C. 2008) ...................................................... 43, 48

*Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev.*,
   934 F.2d 209 (9th Cir. 1991) .................................................................. 46

*People v. Bobek*,
   217 Mich. App. 524 (1996) ..................................................................... 19

*Philip Carey Mfg. Co. v. Taylor*,
   286 F.2d 782 (6th Cir. 1961) ............................................................ 18, 25

*Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*,
   469 Mich. 362 (2003) .............................................................................. 16

*RE/MAX Int'l, Inc. v. Realty One, Inc.*,
   271 F.3d 633 (6th Cir. 2001) .................................................................. 14

*Rory v. Continental Ins. Co.*,
  473 Mich. 457 (2005) ............................................................... 15, 16

*Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*,
  267 Mich. App. 708 (2005) ................................................................ 21

*Senju Pharm. Co. v. Apotex Inc.*,
  746 F.3d 1344 (Fed. Cir. 2014) ....................................................... 25

*Smith v. ABN AMRO Mortg. Grp., Inc.*,
  434 F. App'x 454 (6th Cir. 2011) ...................................................... 16

*Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*,
  181 F.3d 759 (6th Cir. 1999) ............................................................ 14

*Sole v. Wyner*,
  551 U.S. 74 (2007) ............................................................................ 32

*State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*,
  398 F. App'x 128 (6th Cir. 2010) ...................................................... 29

*Talley v. Herzog*,
  2019 WL 1645258 (Mich. Ct. App. Apr. 16, 2019) .......................... 35

*Tennial v. United Parcel Serv., Inc.*,
  840 F.3d 292 (6th Cir. 2016) ............................................................ 14

*Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1983) .................................................................... 31, 36

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) .......................................................................... 47

*Tinman ex rel. Tinman v. Blue Cross & Blue Shield of Mich.*,
  2012 WL 3870643 (Mich. Ct. App. Sept. 6, 2012) .......................... 33

*TMW Enters., Inc. v. Fed. Ins. Co.*,
  619 F.3d 574 (6th Cir. 2010) ............................................................ 26

*Tompkins v. Troy Sch. Dist.*,
  199 F. App'x 463 (6th Cir. 2006) ...................................................... 35

*Town of Newton v. Rumery*,
  480 U.S. 386 (1987) .......................................................................... 37

*U.S. ex rel. Bagley v. TRW, Inc.*,
  212 F.R.D. 554 (C.D. Cal. 2003) ...................................................... 45

*U.S. ex rel. Battiata v. Puchalski*,
  906 F. Supp. 2d 451 (D.S.C. 2012) .................................................. 46

*U.S., ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*,
  188 F.3d 510 (6th Cir. 1999) ............................................................ 38

*U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*,
  104 F.3d 1453 (4th Cir. 1997) .......................................................... 42

*U.S. ex rel. Bryant v. Cmty. Health Sys., Inc.*,
  24 F.4th 1024 (6th Cir. 2022) .......................................................... 44

*U.S. ex rel. Charte v. Am. Tutor, Inc.*,
   934 F.3d 346 (3d Cir. 2019)............................................................ 48

*U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*,
   937 F. Supp. 1039 (S.D.N.Y. 1996)................................................ 39

*U.S. ex. rel. Doghramji v. Cmty. Health Sys., Inc.*,
   666 F. App'x 410 (6th Cir. 2016) ............................................. 37, 42

*U.S. ex rel. Doyle v. Health Possibilities, P.S.C.*,
   207 F.3d 335 (6th Cir. 2000)................................................. 5, 6, 42

*U.S. ex rel. Fry v. Health All. of Greater Cincinnati*,
   2009 WL 1324164 (S.D. Ohio May 12, 2009) ........................... 39, 40

*U.S. ex rel. Fullington v. Parkway Hosp., Inc.*,
   351 B.R. 280 (E.D.N.Y. 2006)........................................................ 47

*U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*,
   96 F. Supp. 3d 504 (E.D. Pa. 2015) .............................................. 43

*U.S. ex. rel. Grandeau v. Cancer Treatment Centers of Am.*,
   350 F. Supp. 2d 765 (N.D. Ill. 2004) ............................................ 45

*U.S. ex rel. Head v. Kane Co.*,
   668 F. Supp. 2d 146 (D.D.C. 2009) .......................................... 46, 47

*U.S. ex rel. Longhi v. United States*,
   575 F.3d 458 (5th Cir. 2009)........................................................... 7

*U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
   961 F.2d 46 (4th Cir. 1992)............................................................ 41

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
   505 F. Supp. 2d 20 (D.D.C. 2007) ............................... 38, 39, 40, 45

*U.S. ex rel. Nehls v. Omnicare, Inc.*,
   2013 WL 3819671 (N.D. Ill. July 23, 2013)............................... 39, 40

*U.S. ex rel. Ruhe v. Masimo Corp.*,
   929 F. Supp. 2d 1033 (C.D. Cal. 2012) ......................................... 45

*U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
   41 F.3d 1032 (6th Cir. 1994)..................................................... 39, 41

*U.S. ex rel. Vainer v. Davita, Inc.*,
   2013 WL 1342431 (N.D. Ga. Feb. 13, 2013) ................................. 40

*U.S. ex rel. Wildhirt v. AARS Forever, Inc.*,
   2013 WL 5304092 (N.D. Ill. Sept. 19, 2013) ................................. 46

*United States v. Castano*,
   906 F.3d 458 (6th Cir. 2018)......................................................... 15

*United States v. Ferguson*,
   681 F.3d 826 (6th Cir. 2012)........................................................... 3

*United States v. Fowler*,
   819 F.3d 298 (6th Cir. 2016).......................................................... 14

*Universal Fid. LP v. United States*,
   70 Fed. Cl. 310 (2006) ........................................................... 31
*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ............................................................... 47
*Wyandotte Elec. Supply Co., v. Elec. Tech. Sys., Inc.*,
   499 Mich. 127 (2016) ............................................................. 22
*X Corp. v. Doe*,
   805 F. Supp. 1298 (E.D. Va. 1992) ........................................ 39
*Y.B. v. Williamson Cnty. Board of Educ.*,
   2009 WL 4061311 (M.D. Tenn. Nov. 20, 2009) ..................... 35

**Statutes**

28 U.S.C. §§1331, 1332(a)(1), and §1367(a) .................................. 11, 1
31 U.S.C. § 3730(b)(1) ..................................................................... 33
31 U.S.C. § 3730(d)(1)–(2) .......................................................... 41, 42
31 U.S.C. § 3730(d)(3), (4) .......................................................... 39, 46

**Rules**

Fed. R. App. P. 32(a)(5) .................................................................. 50
Fed. R. App. P. 32(a)(6) .................................................................. 50
Fed. R. App. P. 32(f) ....................................................................... 50
Fed. R. App. P. 32(g)(1) .................................................................. 50

**Other Authorities**

S. Rep. No. 99-345 .......................................................................... 44

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. Appellant believes that oral argument would be appropriate to clarify any factual discrepancies and further persuade the Court as to how the District Court erred and abused its discretion.

## STATEMENT OF JURISDICTION

Subject matter jurisdiction was based on 28 U.S.C. §§1331, 1332(a)(1), and §1367(a). The basis of this Court's jurisdiction is §1291. On September 14, 2023, the District Court entered an Opinion and Order Granting Plaintiff's Motion for Attorney Fees and Costs. A timely Notice of Appeal was filed on October 23, 2023.

## <u>ISSUES PRESENTED</u>

I.  Whether the District Court erred in interpreting the Settlement Agreement to entitle State Farm to fees and costs for enforcement proceedings in this case, where the Settlement Agreement explicitly limits such fees and costs to circumstances where a separate action is filed?

Answer: Yes.

II.  Whether the District Court erred in finding that the general indemnity provisions in the Settlement Agreement trump the specific cost of enforcement clauses and that State Farm's motions to enforce qualify as sums incurred in obtaining dismissal of the *Qui Tam* Action?

Answer: Yes.

III.  Whether the District Court erred in finding State Farm to be the "prevailing party", where State Farm initiated enforcement proceedings in order to obtain dismissal from a separate Q*ui Tam* Action, and where State Farm remains a defendant in that action?

Answer: Yes.

IV.  Whether the District Court's award of fees and costs to a *qui tam* defendant, and against a *qui tam* relator, is contrary to public policy?

Answer: Yes.

## STATEMENT OF THE CASE

On March 6, 2019, Plaintiff-Appellee State Farm Automobile Insurance Company ("State Farm") initiated a lawsuit alleging Defendant-Appellant Michael Angelo ("Angelo"), and others, had "fraudulently obtain[ed] money *from State Farm*...for services purportedly rendered to individuals ("patients") who have been in automobile accidents and are eligible for personal injury protection benefits ("No-Fault Benefits") under State Farm Mutual policies when, in fact, the services are either not performed or are performed regardless of whether they may be medically necessary." [Compl., R.1, Page ID # 2, 4]. State Farm identified 210 individuals treated by Defendants from 2015 to 2017, asserting the RICO Case pertained only to *bills submitted to State Farm*. [*Id*., Page ID # 35–36, 56–57, 58]. State Farm sought (1) "a declaratory judgment that [it] is not liable for any pending *bill or bills* that Defendants have *submitted...to date*", and (2) recovery of "$200,000 in No-Fault Benefits *paid* [by State Farm] to Defendants[.]" [*Id*., Page ID # 5, 54, 57–61].

On July 24, 2019, Angelo initiated a False Claims Act ("FCA") lawsuit ("*Qui Tam* Action") under seal against State Farm "*on behalf of* the United States...and...Michigan." [*Qui Tam* Compl., R. 118-3, Page ID # 6718]. The *Qui Tam* Action did not relate to, nor arise from, any claims asserted in the RICO Case, but instead, related to State Farm's fraudulent Section 111 reporting. [*Id*., Page ID # 6737–39]. The *Qui Tam* Action alleged damages to the United States (the

"Government") and State of Michigan (collectively, the "Governments") relating to claims *paid by the Governments* "without being reimbursed by [State Farm]." [*Id*., Page ID #6718].[1] The *Qui Tam* Case remained under seal for more than two years until it was unsealed on August 11, 2021. [Unsealing Order, R. 172-4].

In the final months of 2020, the parties engaged in settlement discussions. In the abundance of caution, Angelo sought advisement of the Government regarding whether settlement of the RICO Case would encompass the Government's FCA claims against State Farm in the *Qui Tam* Action. [Nov. 2020 Government Correspondence, R. 165-2]. The Government confirmed the Settlement Agreement would not impact the *Qui Tam* Action, which remained under seal. [*Id*.].

On February 19, 2021, the parties entered into a Settlement Agreement and Release ("Settlement Agreement"). [Settlement Agreement, R. 118-2].[2] In exchange for dismissing the RICO Case, Angelo agreed to, and did, dismiss 347 claims and causes of action against State Farm that were pending in various state courts relating to (1) allegations asserted in the case (which involved claims for 210 specific patients), or (2) claims under the Michigan No-Fault Act involving treatment

---

[1] The *Qui Tam* Action alleged State Farm "knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the United States and the State of Michigan", and "knowingly present[ed] false or fraudulent information which cause[d] payment or approval from the United States and the State of Michigan." [*Qui Tam* Compl., R. 118-3, Page ID # 6720–21, 6767–70].
[2] An unredacted copy of the Settlement Agreement is available at R. 125-1.

provided to State Farm insureds. [Resp. to First Mot., R. 126, Page ID # 7137–38]. At this time, the *Qui Tam* Action remained under seal, meaning neither State Farm nor Angelo could have contemplated dismissal of the *Qui Tam* Action as part of the Settlement Agreement.[3] On August 11, 2021, the *Qui Tam* Action was unsealed and subsequently served on all defendants.[4] [Unsealing Order, R. 172-4].

On April 13, 2021, State Farm emailed Angelo's counsel and stated, "[w]e've recently become aware of the [*Qui Tam* Action].... Angelo must immediately take all steps necessary *to dismiss the Qui Tam Lawsuit with prejudice* pursuant to the Confidential Settlement Agreement[.]" [Apr. 13, 2021, Correspondence, R. 118-4, Page ID #7010; *see also id.*, Page ID #7007 ("[T]he Qui Tam Lawsuit *must be dismissed*" because "the claims asserted by Angelo in the Qui Tam Lawsuit clearly 'aris[e] from' the provision of MVA Related Health Care Services, as defined in the Settlement Agreement in the RICO Case, by Angelo's entities, and these allegations

---

[3] The District Court erroneously determined that the Settlement Agreement constituted a "*bargained-for* dismissal of the pending *qui tam* action[.]" [Third Injunctive Order, R. 176, Page ID #8851]. That decision is currently subject to appeal, with oral argument set to take place before this Court on February 1, 2024. *See* Case Nos. 22-1409 and 23-1350.
[4] On April 6, 2021, Judge Tarnow order the original *Qui Tam* Complaint unsealed. However, Angelo filed an Amended *Qui Tam* Complaint on June 8, 2021, thereby reinstituting the seal. The unsealing order was amended and effectuated on August 11, 2021. This Court may take judicial notice of the docket in the *Qui Tam* Action. *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).

could have been raised in the RICO Case.")].[5] State Farm sought Angelo's "consent to transfer the Qui Tam lawsuit to Judge Cleland as a companion case to the RICO case, *and dismiss the Qui Tam complaint with prejudice* pursuant to the Settlement Agreement." [*Id.*, Page ID # 7007; *see also id.*, Page ID # 7004 ("[W]e demand[] that you *dismiss the qui tam lawsuit* within 15 days of my email.")].

**State Farm's First Motion to Enforce the Settlement Agreement "*And Compel Dismissal*" of the *Qui Tam* Action**

On April 29, 2021, State Farm filed its *Motion to Enforce the Settlement Agreement and Release Against Michael Angelo and* <u>*Compel Dismissal of Related Case*</u> ("First Motion") [First Mot. to Enforce, R. 118, Page ID #6666]. State Farm argued that "[t]he Qui Tam Lawsuit involves the same underlying bills for healthcare services already released by the Michael Angelo Entities under the Settlement Agreement."[6] [*Id.*].

---

[5] Subsequently, State Farm contended that it "never argued that Angelo could bring the *qui tam* claims in the RICO lawsuit." [Reply to First Mot. to Enforce, R. 130, Page ID # 7335]. This is relevant as it demonstrates that the relief originally sought by State Farm (and its legal basis for doing so) continued to shift throughout enforcement proceedings and was markedly distinct from the relief ultimately granted by the District Court. Further, it conflicts with what the District Court erroneously held when finding the *qui tam* claims within the scope of the Settlement Agreement: "This particular agreement's scope is limited to claims that could have been raised in this litigation." [First Injunctive Order, R. 149, Page ID # 8080].

[6] Recall, this action involves State Farm's assertion that it is entitled to *repayment of* $200,000 in No-Fault benefits *it paid* to Defendants [Compl., R. 1, ¶¶ 12, 160, 168, 173, 179, 183], while the *Qui Tam* Action alleges "a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements", [CM/ECF for E.D. Mich., No. 2:19-cv-12165 ("*Qui Tam* Docket"), ECF No. 102,

State Farm sought an order from the District Court "requiring Michael Angelo to immediately take all necessary steps *to secure dismissal of the Qui Tam Complaint*" and "directing Michael Angelo to pay SFMAIC's expenses incurred in making this Motion." [*Id.*, Page ID # 6668].

Angelo responded that (1) the *Qui Tam* Action was "brought in the name of the Government" and "belong[s] to the government," [Resp. to First Mot., R. 126, Page ID # 7144 (citing *U.S. ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335 (6th Cir. 2000))]; (2) "[i]t is undisputed that a post-filing release of *qui tam* claims is unenforceable", [*id.*, Page ID # 7145–49]; (3) State Farm's motion conflicts with the explicit public policies enshrined in the  FCA, [*id.,* Page ID # 7149–55]; and (4) the Amended *Qui Tam* Complaint involves separate claims brought by a separate co-relator, [*id.,* Page ID # 7155].

On May 20, 2021, State Farm replied that "when Angelo agreed to release all claims that 'any Michael Angelo Entity has now' . . . the *Qui Tam* Lawsuit was included in that Release." [Reply to First Mot. to Enforce, R. 130, Page ID # 7332]. State Farm argued that (1) this Court's decision in *Health Possibilities* was "no longer good law", [*id.*]; and (2) regardless, "in *Health Possibilities*, the government objected to dismissal of the *qui tam* action[,]" while "[h]ere, Angelo does not know

Page ID # 2954], involving millions of dollars in damages on behalf of United States and State of Michigan relating to claims *paid by the government* "*without being reimbursed by* [*State Farm.*]" (*Qui Tam* Docket, ECF No. 1 ¶ 2).

5

whether the government would agree *to dismissal of the Qui Tam Lawsuit because he, in breach of the Settlement Agreement, has not asked.*" [*Id.*, Page ID # 7334 (emphasis added)].

**The District Court's First Injunctive Order**

On February 28, 2022, the District Court granted in part State Farm's First Motion ("First Injunctive Order"). [First Injunctive Order, R. 149]. In relevant part, the District Court stated (1) "[State Farm] contends that [Angelo] is in breach of [the Settlement Agreement] by virtue of his role as a relator in a *qui tam* action…under the False Claims Act"; and (2) "[State Farm]…brought the present motion before the court, contending that, because [Angelo] filed the *Qui Tam* Action, [Angelo] is in breach of the parties' settlement agreement." [*Id.*, Page ID # 8067]. The District Court acknowledged that "[t]he FCA makes clear that the court could not enforce the settlement agreement by mandating dismissal of [State Farm] from the *Qui Tam* Action" and that "[State Farm] can be dismissed from the *Qui Tam* Action only if the government consents."[7] [*Id.*, Page ID # 8080]. The Court determined that, while it could not "order [Angelo] to voluntarily dismiss the *Qui Tam* Action against [State Farm]," it could order Angelo "to *simply ask*[] the government for consent to dismiss

---

[7] The District Court stated State Farm "effectively conced[ed] that *the only way the agreement could be enforced* is by Angelo requesting the government's consent to dismiss the case." [Order Denying Mot. for Reconsideration, R. 157, Page ID # 8297 (citing First Mot. to Enforce, R. 118, Page ID # 6695) (emphasis added)].

[State Farm] from the Qui Tam Action." [*Id.*, Page ID # 8078 (requiring Angelo "merely to *seek* the government for consent", "*request the government's consent* to dismiss the claims against [State Farm].");￼ *see also id*., Page ID # 8080 ("Merely requiring [Angelo] to ask the government's consent to dismiss the action.")]. The Court stated "[i]f, upon request, the government decides it does not consent to dismissal, then that is the end of the matter." [*Id.*, Page ID # 8079].

The District Court held further that enforcing the Settlement Agreement "does not conflict with the underlying public policies of the FCA." [*Id.*]. The Court found that enforcement does not allow "guilty individuals to 'insulate themselves from the reach of the FCA' . . . [because t]his particular agreement's scope is limited to claims that could have been raised in this litigation." [*Id.*, Page ID # 8080] quoting *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 474 (5th Cir. 2009). State Farm's requests for costs and fees were deemed premature. [*Id.*, Page ID # 8080 n.6].

Angelo then filed a Motion for Reconsideration, [Mot. for Reconsideration, R. 150], and a Motion to Stay, [Mot. to Stay, R. 151]. On May 2, 2022, the District Court denied Angelo's Motion for Reconsideration and terminated Angelo's Motion to Stay "as moot" and ordered Angelo to "forthwith solicit the government's consent to dismiss the instant *Qui Tam* Action against State Farm…not later than Monday, May 16, 2022." [Order Denying Mot. for Reconsideration, Page ID # 8300–01].

Angelo promptly filed a Notice of Appeal. [R. 158]. Angelo also filed an

Emergency Motion to Stay Pending Appeal of the First Injunctive Order, [R. 160], which was denied on May 14, 2022. [R. 161].

**The Government Repeatedly Informs Angelo That It Does Not Consent to Dismissal of State Farm from the Qui Tam Action**

On May 16, 2022, Angelo informed the Court that the Government did not consent to dismissal of State Farm from the *Qui Tam* Action. (First Decl., R. 162; Government Confirmation, R. 165-4). In other words, the relief sought by State Farm (dismissal from the *Qui Tam* Actional) was rejected.

Unsatisfied, on June 16, 2022, State Farm filed a Motion to Enforce the District Court's May 2, 2022, Order ("Second Motion") [R. 163]. This time, State Farm sought dismissal from the *Qui Tam* Action by seeking an order requiring Angelo to file a motion for voluntary dismissal in the *Qui Tam* Action. [*Id.*, Page ID # 8348–49; Reply to Second Mot., R. 166, Page ID # 8479]. Angelo responded, again informing the Court of the Government's unequivocal rejection of the request to dismiss State Farm from the *Qui Tam* Action. [Resp. to Second Mot. to Enforce, R. 165; Second Decl., R. 171; Second Government Confirmation, R. 171-1). At a hearing on March 22, 2023, the District Court stated:

> And let me just orient from my perspective. . . . I issued the order that ordained the solicitation of government counsel in the other case *to effectuate a dismissal of State Farm from that other case, the other Qui Tam case…And it seems to me that Defendant Angelo, through the declaration number 2, at least nominally has complied with what I ordered.* So a communication, a solicitation. A solicitation to do what? *To allow the case to be dismissed, vis-a-vis the State Farm involvement.*

8

It seems to me that all of that's been done…*it just, it seems to me that it's been done*, Mr. Allen.

[Hr'g Tr., R. 174, Page ID #8667–68]. At the hearing, Angelo again informed the District Court that the Government does not consent to dismissal of the *Qui Tam* Action against State Farm. [*Id.*, Page ID # 8681–8709, 8718–21].

Nevertheless, the District Court granted State Farm's motion and ordered Angelo to file a Request for Consent to Dismiss State Farm in the *Qui Tam* Action. [Third Injunctive Order, R. 176, Page ID # 8861]. Angelo promptly filed another Emergency Motion to Stay, [R. 177], and Motion for Reconsideration [R. 178]. The District Court granted a stay of the Third Injunctive Order and ordered State Farm to file a response. [Order Granting Stay, R. 179].

On Friday, April 14, four days after State Farm's Response, [R. 180], the District Court lifted the Stay, denied Angelo's Second Motion for Reconsideration, and ordered Angelo to file "the [State Farm-drafted] request for consent to dismiss" in the *Qui Tam* Case "no later than 5:00 p.m. on [Saturday] April 15[.]" [Fourth Injunctive Order, R. 181, Page ID # 8977].

Angelo immediately filed a Notice of Appeal, [R. 186], and an Emergency Motion for Stay with this Court. [6th Cir., No. 23-1340, Doc. 4]. This Court granted Administrative Stay. [R. 188]. On April 21, this Court dissolved its Administrative Stay and denied Angelo's motion for stay pending appeal. [6th Cir., No. 23-1340, Doc. 10]. On May 3, Angelo filed a Motion to Consolidate Case Nos. 22-1409 and

23-1340, which this Court granted.[8] [6th Cir., No. 22-1409, Docs. 34, 38].

On April 22, Angelo filed *the State Farm-drafted* Notice of Request for Consent to Dismiss State Farm in the *Qui Tam* Action, as required. [*Qui Tam* Docket, First Notice, ECF No. 455; Second Notice, ECF No. 456; Third Notice, ECF No. 471]. That same day, co-relator MSP filed its Objections to Angelo's Notice. [*Qui Tam* Docket, MSP Objections, ECF No. 457]. The Governments then filed their Notices of Consent to *Partial* Dismissal. [*Qui Tam* Docket, Governments' Notices, ECF Nos. 468, 474]. The Government only consented to "dismissal of Relator Angelo's claims asserted against [State Farm] without prejudice", stating:

> *to the extent there are other claims alleged in this case*, apart from those alleged by Relator Angelo *against the State Farm Defendants*, the above-referenced consent of the Attorney General, at this time, *is limited only to the dismissal of Relator Angelo's claims* against the State Farm Defendants in this case.

[*Id.*]. Though the Government's Notice was clear that it *did not consent* to dismissal of State Farm from the *Qui Tam* Action, State Farm responded with its own interpretation, contending the Government consented to dismissing State Farm from the entire *Qui Tam* Action. [*Qui Tam* Docket, Mots. to Dismiss, ECF No. 473, 475]. In response, the Government filed another Statement of Interest in the *Qui Tam* Action, reiterating that it does not consent to dismissal of State Farm from the *Qui*

---

[8] The appeal in Case No. 22-1409 had not yet gone to briefing and was held in abeyance pending mediation through this Court's Office of Circuit Mediators from June 27, 2022, until May 18, 2023. [6th Cir., No. 22-1409, Docs. 16, 36].

*Tam* Action. [*Qui Tam* Docket, ECF No. 195-1]. Specifically, the Government stated:

> State Farm…*appear to have interpreted* the [Government's] Notice of Consent to Partial Dismissal as its consent to dismissal *of all claims alleged against the State Farm*…in this case. As referenced in the [Government's] Notice, the [Government] consents only to the dismissal of Relator Angelo insofar as he asserts claims against the State Farm Defendants in this case.

[*Id*., Page ID # 9083]. The *Qui Tam* Court has not yet ruled on these filings. To this day, State Farm remains a defendant in the *Qui Tam* Action—in other words, to date, State Farm has not obtained the relief it sought through the enforcement proceedings (i.e., dismissal from the *Qui Tam* Action).

**State Farm Files Its Motion for Attorney Fees and Costs**

Despite failing to prevail in obtaining dismissal from the *Qui Tam* Action through enforcement proceedings in the RICO Case, State Farm then filed a motion for attorney fees and costs incurred in both cases, [Mot. for Costs, R. 194], to which Angelo responded. [Resp. to Mot. for Costs, R. 195]. In relevant part, Angelo argued that (1) under the plain language of the Settlement Agreement, State Farm is not entitled to recover fees or costs for its enforcement efforts in this case; (2) State Farm is not the "prevailing party" to warrant an award of fees or costs; and (3) State Farm's motion is premature given the three pending appeals before this Court that will likely impact the scope of State Farm's entitlement to fees, if any.

On September 14, 2023, the District Court rejected Angelo's arguments and

granted State Farm's Motion for Attorney Fees and Costs. [Order Awarding Fees & Costs, R. 197]. The District Court ordered State Farm to "file a bill of costs and fees for the court's review within thirty (30) days of this opinion and order." [*Id.,* Page ID # 9122].

On October 13, 2023, State Farm filed its Bill of Fees and Costs, where it is seeking an order for Angelo to pay approximately $1.3 million in attorney fees purportedly related to State Farm's enforcement proceedings in this case, as well as State Farm's litigation efforts in the *Qui Tam* Action. [State Farm Bill of Fees & Costs, R. 198].

State Farm asserts that Angelo is not entitled to object or otherwise contest its Bill of Fees and Costs. [State Farm Opp. to Mot. to Stay, R. 204, Page ID # 10013–14 ("Nothing in this Court's Fee Order allows Angelo to file objections to SFMAIC's Bill of Costs, and the Local Rule that Angelo claims permits him to file objections does not apply, meaning Angelo does not even have to expend any further effort on briefing.")]. Angelo filed a Motion to Stay Proceeding pending resolution of his appeals before this Court. [Mot. to Stay Proceedings, R. 203; Reply in Supp. of Mot. to Stay Proceedings, R. 205]. Angelo has also filed a Motion to Stay Proceedings before this Court, which also remains pending. [6th Cir., No. 23-1918, Doc. 7].

## SUMMARY OF ARGUMENT

The District Court erred as a matter of law and made clear factual errors in its Order Awarding Fees and Costs.

First, it erred by equivocating the terms action and proceeding to find that State Farm's two motions filed with the District Court constituted "action[s] to enforce the terms" of the Settlement Agreement. However, the term "action" has a distinct legal definition which requires the commencement of a lawsuit.

Second, the District Court erred insofar as it found that the motions to enforce qualify for costs under Paragraph 3 because (1) under Michigan law, the availability of costs for enforcement is controlled by the specific paragraphs on point, not the broad, general provision in Paragraph 3, and (2) according to the District Court, State Farm neither sought nor achieved dismissal through its motions, thereby disqualifying them as "sums incurred in defending or obtaining dismissal of" the *Qui Tam* Action.

Third, the District Court erred by enforcing the Settlement Agreement in a way that directly conflicts with four strong public policies: (1) encouraging whistleblowing, (2) incentivizing fulsome private prosecution of *qui tam* actions, (3) protecting whistleblowers, and (4) punishing defendants and deterring future fraud.

13

Fourth, the District Court erred by finding that State Farm is the "prevailing party" because the relief that was ordered did not directly or immediately result in a change in behavior inuring to the benefit of State Farm.

## ARGUMENT

### I. STANDARD OF REVIEW

"This Court reviews for clear error the district court's factual determination that the parties had agreed to settlement terms; however, we review the district court's decision to grant a motion to enforce the settlement based on its preliminary factual finding for an abuse of discretion." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001) (citation omitted). In general, this Court reviews "a district court's award of attorney fees and costs for an abuse of discretion." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).

"The abuse-of-discretion standard is also applicable to our review of the district court's decision concerning the taxation of costs." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016) (citing *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Fowler*, 819 F.3d 298, 303 (6th Cir. 2016) (cleaned up). Meaning, "conclusions of law are reviewed *de novo* and factual findings are reviewed for clear error." *Info-Hold, Inc.*

*v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (cleaned up). Clear error requires a "definite and firm conviction that a mistake has been committed." *United States v. Castano*, 906 F.3d 458, 467 (6th Cir. 2018) (cleaned up).

"The proper interpretation of a contract is a question of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). "[T]herefore, this court reviews questions of contract interpretation under a *de novo* standard." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l., Ltd*., 556 F.3d 459, 465 (6th Cir. 2009); *see also Rory v. Continental Ins. Co*., 473 Mich. 457, 464 (2005) ("Moreover, questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed *de novo*.").

## II.    THE DISTRICT COURT ERRED BY FINDING THAT THE ENFORCEMENT PROCEEDINGS QUALIFY FOR COSTS/FEES UNDER THE TERMS OF THE SETTLEMENT AGREEMENT

The unambiguous terms of the Settlement Agreement explicitly limit the recovery of costs from enforcing the settlement to a scenario when a party must file a separate enforcement action. The District Court erred by equivocation the term "action" with "proceeding". Further, the costs of enforcement are not recoverable under Paragraph 3 of the Settlement Agreement. Paragraphs 14 and 25 contain specific procedures and limitations on when such costs are recoverable, while Paragraph 3 contains a general and broad indemnity provision. However, Michigan law instructs that specific terms and clauses control over more general provisions

15

when interpretating a contract. Moreover, the District Court itself found that State Farm neither sought nor achieved dismissal of the *Qui Tam* Action through its motions to enforce the Settlement Agreement. Thus, the costs from those motions cannot be "sums incurred in defending or obtaining dismissal" of the *Qui Tam* Action. These clear legal errors warrant reversal.

### A. The Enforcement *Proceedings* Before the District Court Do Not Constitute an *Action* to Enforce the Terms of the Settlement Agreement

"Because settlement agreements are a type of contract, the formation and enforceability…are governed by state contract law." *Smith v. ABN AMRO Mortg. Grp., Inc*., 434 F. App'x 454, 460 (6th Cir. 2011) (citing *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150 (6th Cir. 1992)). Pursuant to Michigan law, when interpreting a contract, the Court's obligation is to determine the intent of the parties. *See Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003). Where certain words are undefined, but are "[w]ords that have acquired a specialized meaning in the legal context, [they] must be accorded their *legal* meaning." *Buckhannon Board & Care Home, Inc., v. W. Va. Dep't of Health & Human Res.*, 532 U.S., 598, 615 (2001). After ascertaining the meaning of the contract's terms, "a court must construe and apply unambiguous contract provisions as written." *Rory*, 473 Mich. at 464.

In examining whether the Settlement Agreement conferred a right to recover

attorney's fees and costs, State Farm argued, and the District Court agreed, "Paragraph 25 [of the Settlement Agreement] provides the substantive right for the parties to recover costs, including reasonable attorney's fees, in any action to enforce the terms of the Agreement", whereas "Paragraph 14 specifies the procedural mechanism…and then reiterates that attorney fees are available." [Reply in Supp. of Mot. for Fees & Costs, R. 196, Page ID # 9088–89]. Preliminarily, the paragraphs state, in whole:

> Paragraph 14. <u>Continuing Jurisdiction and Dispute Resolution</u>. The parties agree that the stipulation of dismissal referenced above in paragraph 3 shall provide Judge Robert H. Cleland to retain jurisdiction to enforce any term of this Confidential Agreement, including the confidentiality provisions set forth in paragraph 13. ***If*** Judge Cleland declines jurisdiction or is not available, the Parties agree that any ***action*** to enforce any term of this Confidential Agreement shall be commenced in the U.S. Dist. Cout for the Eastern Dist. of Michigan, Detroit Division (to the extent there is jurisdiction) and marked as a related ***case*** to the Litigation. If any such claim is brought, the prevailing Party shall be entitled to reasonable attorney's fees and costs.
> …
> Paragraph 25. <u>Costs of Enforcement</u>. In any ***action*** to enforce the terms of this Confidential Agreement pursuant to paragraph 14, the prevailing Party shall recover its costs, including reasonable attorney's fees, from the other Party to the ***action***.

[Settlement Agreement, R. 196-1, Page ID # 9105–06, 9107–08 (emphasis added)].

Here, the District Court erred, as a matter of law, by equating "State Farm's enforcement proceedings" in "this case" with "any action to enforce the terms" of the Settlement Agreement. [Order Awarding Fees & Costs, R. 197, Page ID # 9119].

First, the word "proceedings" does not appear in Paragraphs 14 or 25, and the

phrase "enforcement proceedings" appears nowhere in the Settlement Agreement. Still, State Farm argued, "SFMAIC's ***Motion to Enforce*** *Settlement and* ***Motion to Enforce*** *May 2, 2022 Order*—along with the related <u>proceedings</u>—were undertaken to enforce Angelo's obligations under the Settlement Agreement…. *Those* are the sets of <u>proceedings</u> referenced in SFMAIC's Motion…. attorney's fees are available '[i]f any such claim [*i.e.*, <u>enforcement proceeding</u>] is brought.'" [Reply in Supp. of Mot. for Fees & Costs, R. 196, Page ID # 9089] (brackets in original; emphasis added). Contrary to the District Court's holding, the definitions and Parties' use of the words "action" and "proceeding" make clear that the two are not interchangeable.

An "action" is defined as "a lawsuit brought in court; a formal complaint within the jurisdiction of a court of law." *Epps v. 4 Quarters Restoration LLC*, 498 Mich. 518, 530 (2015) (holding that a prohibition on "bringing an action" does not preclude a party from raising substantively the same as a defense); *see also Kulak v. City of Birmingham*, 2006 WL 954178, at *3 (Mich. Ct. App. Apr. 13, 2006) (defining "action" as "'a civil action,' *i.e.*, a civil lawsuit" and explaining "'[t]he terms '*action*' and '*suit*' are nearly if not quite synonymous." (quoting Black's Law Dictionary (8th ed. 2004) (emphasis added)). Likewise, the "Sixth Circuit has interpreted 'action' to mean 'the entire controversy[.]'" *Letherer v. Alger Grp., LLC,* 328 F.3d 262, 266 (6th Cir. 2003) (quoting *Philip Carey Mfg. Co. v. Taylor,* 286 F.2d 782, 785 (6th Cir. 1961)), *overruled on other grounds by Blackburn v. Oaktree*

18

*Cap. Mgmt., LLC,* 511 F.3d 633, 636 (6th Cir. 2008).[9]

The definition above aligns with the term "action" as employed in the Settlement Agreement. For example, Paragraph 25 states "***In*** any action" and "Party ***to the action***"; Paragraph 14 instructs "any ***action*** to enforce" the terms, "***shall be commenced in*** the Eastern District of Michigan," and "marked as a related ***case***." [Settlement Agreement, R. 196-1, Page ID # 9105-08 (emphasis added)]. Conversely, in this context, interpreting "action" to mean "doing something in order to make something happen or to deal with a situation" is nonsensical. *Action*, Oxford English Dictionary (3rd ed. 2022). Accordingly, the Parties intended "action" to mean a lawsuit or case. On the other hand, the term "proceeding" "[i]n a general sense, is the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of the judgement." *People v. Bobek*, 217 Mich. App. 524, 530 (1996) (quoting Black's Law Dictionary (6th ed. 1991)).[10]

---

[9] An "action" is simply a "lawsuit brought in court." *Action*, Black's Law Dictionary (6th ed. 1991).

[10] Black's Law Dictionary also contains the following commentary on the term: "Proceeding" is a word much used to express the business done in courts.... It is more comprehensive than the word 'action.'… As applied to actions, the term 'proceeding' may include — (1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment,

While Paragraphs 14 and 25 do not include the term "proceedings", it appears in Paragraph 3: "take all steps…to secure the discontinuance of, any lawsuits, arbitrations, appeals, claims, and other *proceedings*[.]". [Settlement Agreement, R. 196-1, Page ID # 9098] (emphasis added). Under Michigan law, provisions in a contract "must be read as a whole and together with the remaining provisions of the [contract], and not be dissociating one part thereof from the remainder." *Fox v. Detroit Trust Co.*, 285 Mich. 669, 676 (1938); *see also Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799–800 (6th Cir. 1996) ("Michigan law requires courts to look at the [contract] as a whole."); *Johnston v. Miller*, 326 Mich. 682, 688 (1950) ("[W]here a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part.").

It follows that the Parties did not intend to limit "proceedings", as used in the Settlement Agreement, to only include a lawsuit, case, or action. State Farm made

---

injunction, writ of ne exeat; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the remittitur, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort.
*Proceeding*, Black's Law Dictionary (11th ed.)

clear, "*Those*" "sets of proceedings" subject to the "scope of the Settlement Agreement's attorney's fees clause", (i.e., Paragraph 25), are "SFMAIC's ***Motion to Enforce Settlement and <u>Motion</u> to Enforce May 2, 2022 Order***—along with the related proceedings." [Reply in Supp. of Mot. for Fees & Costs, R. 196, Page ID # 9091]. State Farm defined its *motions* as *proceedings* but tried to equivocate that as the case itself: "attorney fees are available '[i]f any such claim [*i.e.*, an enforcement proceeding] is brought[.]'". [*Id.* (brackets in original)].[11] Even the District Court's statement, "State Farm's enforcement proceedings <u>*in*</u> this case", appreciates the distinction between "enforcement proceedings" and the actual "case". [Order Awarding Fees & Costs, R. 197, Page ID # 9119] (emphasis added). Hence, the only warranted conclusion is that the Parties never intended the term "action" to be interchangeable with "proceeding" or "enforcement proceeding". *See Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.,* 267 Mich. App. 708, 714 (2005) ("The primary goal in the construction or interpretation of a contract is to honor the intent of the parties."). Given the broader scope of "proceedings", the Parties deliberately restricted rights arising from Paragraphs 14 and 25 to separate "actions" to enforce.

Because the District Court's holding is premised on applying the incorrect meaning of the operative words, its holding is similarly defective. Specifically, the

---

[11] As explained further below, "[t]he term 'claim' has been defined as a cause of action." *Kopf v. Bolser*, 286 Mich. App. 425, 433 (2009) (citing Black's Law Dictionary (8th ed.)).

District Court erred, as a matter of law, by (1) failing to ascertain the correct meaning of the operative legal terms; and (2) failing to enforce the unambiguous terms of the Settlement Agreement as written, and in accordance with the Parties' clear intent.

**B. Paragraphs 25 and 14 of the Settlement Agreement Do Not Permit State Farm to Recover Any Costs or Fees Arising from the Enforcement *Proceedings* Before the District Court**

A court's "goal in contract interpretation is to give effect to the intent of the parties." *Wyandotte Elec. Supply Co., v. Elec. Tech. Sys., Inc*., 499 Mich. 127, 143–44 (2016). Where, as here, "the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich. 19, 24 (2008). Here, the unambiguous language of the Settlement Agreement, adequately informed by the Parties' intent, demonstrates the error in the District Court's finding.

To be clear, Angelo does not deny that Paragraph 25 confers a right to recover attorney's fees and costs to the prevailing party. However, pursuant to the operative terms of Paragraphs 14 and 25, it is apparent that the enforcement proceedings (*i.e.*, State Farm's various motions) are merely measures taken by State Farm in this RICO Action—an action against Angelo and numerous other, unrelated entities. But the scope of Paragraph 25 contemplates the existence of an <u>*action to enforce*</u> the terms of the Settlement Agreement <u>*pursuant to paragraph 14*</u>. It does not entitle recovery for *any proceedings, steps, acts, conduct, or measures* taken *in any action*, regardless

of whether that action was brought to enforce the terms or is consistent with Paragraph 14. State Farm did not bring an action to enforce the terms, they simply filed a motion.

State Farm dubs Paragraph 14 as a mere "procedural mechanism", when, in fact, the pertinent language places significant restraints on the "substantive rights" afforded under Paragraph 25. [Reply in Supp. of Mot. for Fees & Costs, R. 196, Page ID # 9088–89]. The first sentence of Paragraph 14 indicates the agreement for the District Court to retain jurisdiction.[12] There is no reference nor inclusion of costs or fees for enforcement proceedings before the District Court—i.e., instances where Judge Cleland retained jurisdiction. The remainder of Paragraph 14 discusses a separate instance where "Judge Cleland declines jurisdiction or is not available." In that instance, and consistent with the plain meaning of an action to enforce, "*[i]f* any such claim is brought, the prevailing Party shall be entitled" to recovery. [Settlement Agreement, R. 196-1, Page ID # 9105-06]. That is, Paragraph 14 limits fee shifting to the filing of a separate action where the District Court denies jurisdiction or is unavailable. To hold otherwise would render the "*if any such claim is* brought" phrase as surplusage or nugatory. *See Klapp v. United Ins. Grp. Agency, Inc.,* 468

---

[12] "The parties agree that the stipulation of dismissal referenced above in paragraph 3 shall provide Judge Robert H. Cleland to retain jurisdiction to enforce any term of this Confidential Agreement, including the confidentiality provisions set forth in paragraph 13." [Settlement Agreement, R. 196-1, Page ID # 9105-06].

Mich. 459, 467 (2003) (holding that, when possible, a contract should be construed to give harmonious effect to the contract as a whole). When Paragraph 14 is read in conjunction with Paragraph 25, as required, a separate action is a condition precedent to an award of attorney fees. Yet, no such action was commenced.

Assuming the District Court perceived the RICO action to satisfy this prerequisite, that conclusion is untenable for several reasons: (1) that action commenced nearly two years prior to the execution of the Settlement Agreement; (2) that action included numerous non-Angelo-related entities; (3) the Settlement Agreement concerns only Angelo-related entities; and (4) State Farm's own description of the "Nature of the Action"—as stated in its complaint—contradicts such a characterization. [Complaint, R. 1, Page ID #2–5]. Further, because State Farm concedes that the *Qui Tam* Action is not an action to enforce the terms of the Settlement Agreement, there is no action nor any related case where either Party is entitled to recover fees or costs.

What's more, State Farm equivocates "any action to enforce" with "enforcement proceedings" and contends that "Paragraph 25 provides the substantive right for the parties to 'recover [their] costs, including reasonable attorney's fees' in 'any action to enforce the terms' of the Agreement. Paragraph 14 specifies the procedural mechanism—*enforcement proceedings* will be heard by Judge Cleland unless he declines jurisdiction or is unavailable." [Reply in Supp. of

Mot. for Fees & Costs, R. 196, Page ID# 9088–89 (emphasis added)]. However, the phrase "enforcement proceeding" is found nowhere in the Settlement Agreement. Like Paragraph 25, Paragraph 14 reinforces the fact that any recovery for fees is appropriate only in an *action to enforce* the Settlement Agreement. To get around this unavoidable limitation, State Farm added language to the Settlement Agreement: "attorney fees are available '[i]f any such claim [i.e., an *enforcement proceeding*] is brought." [*Id*., Page ID # 9089 (brackets in original)]. The term "claim" is not synonymous with "enforcement proceedings." Of note, the actual definition supports Angelo's reading.

"'[C]laim' is used here synonymously with 'cause of action'" *Keene Corp. v. United States*, 508 U.S. 200 (1993) (quoting Black's Law Dictionary (6th ed. 1990) (defining "claim" as "cause of action")); *see also Philip Carey Mfg*., 286 F.2d at 785 (The word "'claim' refers to what has traditionally been termed cause of action"); *Senju Pharm. Co. v. Apotex Inc*., 746 F.3d 1344, 1349 (Fed. Cir. 2014) ("In civil procedure...'claim' is equivalent to 'cause of action.'"). What's more, the District Court improperly awarded State Farm's costs and fees for *motions* and *enforcement proceedings*, despite neither qualifying as *claims* for purposes of Paragraph 14, nor under Michigan law. *See* Mich. Ct. Rules 2.111(B) (a "Statement of Claim" may take the form of "[a] complaint, counterclaim, crossclaim, or third-party complaint."). The District Court gave no consideration to the legal definition of

"claim", the Parties' use of the term in the Settlement Agreement, and the correlating legal effect.

The District Court rejected Appellant's "reading of the settlement agreement [finding that it] would render paragraph twenty-five entirely superfluous, as there would be no need for a separate 'Costs of Enforcement' provision." [Order Awarding Fees & Costs, R.197, Page ID # 9117]. This is a clear error. First, State Farm itself admits that the last sentence of Paragraph 14 merely "reiterates" the substantive right created in Paragraph 25. [Reply in Support of Motion for Fees & Costs, R. 196, Page ID # 9089]. Second, neither the District Court nor State Farm proposed a reading of Paragraphs 14 and 25 that avoids one or the other having superfluous language. Paragraph 25 explicitly limits itself to "any action . . . pursuant to paragraph 14" and the District Court offered no explanation for the two sentences having different, non-superfluous meanings. Third, "the rule that courts should interpret contracts to avoid superfluous words is a 'tool…for dealing with ambiguity, not a tool for *creating* ambiguity in the first place.'" *Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016); *TMW Enters., Inc. v. Fed. Ins. Co.,* 619 F.3d 574, 578 (6th Cir. 2010). Here, "any action to enforce" has a well-defined, unambiguous meaning that requires the initiation of a separate action.

In addition to disregarding the legal meaning of the operative terms and the

Parties' clear intent, the District Court ignored the apparent rationale supporting Angelo's reading of Paragraph 14. An action filed before a new judge necessarily entails a less efficient, timelier, and more costly process. Whereas filing a motion to enforce the Settlement Agreement before Judge Cleland, who is intimately familiar with the underlying facts, is designed to streamline resolution and minimize litigation expenses. A smoother, cost-efficient process encourages collaboration and a less adversarial approach to conflict resolution. However, the threat of paying costs and fees for both Parties in any dispute undermines these goals and may deter pursuing a remedy provided under the Settlement Agreement. Angelo's reading is of mutual benefit and comports with the Parties' intent to limit fees and costs to separate actions filed as a related case to the instant matter.

As demonstrated above, the District Court's interpretation of the Parties' rights and obligations pursuant to Paragraphs 14 and 25 suffers from numerous fatal defects. Chiefly, by (1) disregarding the clear substantive and procedural directives in Paragraphs 14 and 25; (2) conflating and misapplying the terms *action*, *claim*, and *proceedings*; (3) holding that the proceedings before the District Court are an action to enforce the terms of the Settlement Agreement; and (4) ignoring the cardinal rule in the interpretation of contracts by failing to give effect to the intent of the Parties, and enforce the terms of the Settlement Agreement as written. Therefore, the District Court erred, as a matter of law.

## C. The Proceedings Before the District Court Also Do Not Qualify Under Paragraph 3 of the Settlement Agreement

While the Settlement Agreement includes specific procedures and limitations for recovering the costs of enforcement in Paragraphs 14 and 25, it also has a general indemnity clause in Paragraph 3. In relevant part, Paragraph 3 states:

> [Angelo] shall take all steps necessary to settle, discontinue with prejudice, and to secure the discontinuance of, any lawsuits, arbitrations, appeals, claims, and other proceedings…pending against State Farm…arising from [] the allegations asserted or that could have been asserted in the Litigation…If [Angelo] fail to discontinue with prejudice any such lawsuits, arbitrations, or other proceedings,… [Angelo]…agree[s] to pay and indemnify [State Farm] for any fees, costs, expenses, and liabilities resulting therefrom, including but not limited to any sums incurred in defending or obtaining dismissal of the lawsuits, arbitrations, or other proceedings.

[Settlement Agreement, R. 196-1, ¶3]. State Farm offers this as an alternate theory for recovering its "costs of enforcement," arguing that "[a]s a direct result of [Angelo's failure to secure discontinuance of the *Qui Tam* Action with prejudice], in order to 'obtain[] dismissal' of the *Qui Tam* Action, [State Farm] filed and litigated a Motion to Enforce Settlement and then a Motion to Enforce May 2, 2022 Order." [State Farm Motion for Attorney Fees and Costs, R. 194, Page ID # 9024-25]. The District Court erred in accepting this position.

### 1.    Recovery of Costs of Enforcement is Controlled by the Specific Provisions in Paragraphs 25 and 14

It is a well-founded principle of contract interpretation that "specific terms and exact terms are given greater weight than general language." *State Farm Fire &*

28

*Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 398 F. App'x 128, 133 (6th Cir. 2010) (applying Michigan law); *see also Glaske v. Indep. Bank Corp*., 2016 WL 298986, at *5 (Mich. Ct. App. Jan. 21, 2016) (In reconciling "a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term.") (citing 5 Corbin, Contracts, § 24.23, p. 253).

Here, it is evidently true that general indemnity for "any fees, costs, expenses, and liabilities…including but not limited to any sums incurred in defending or obtaining dismissal of the lawsuits, arbitrations, or other proceedings" is much broader than the specific allowance of "costs, including reasonable attorney's fees" for the "prevailing party" in an "action to enforce the terms of [the Settlement Agreement]." [Settlement Agreement, R. 196-1, ¶¶ 3, 25]. State Farm all but admits this fact when it argued that its recovery of costs to enforce is not limited to "reasonable" fees, as restricted in Paragraphs 14 and 25, because Paragraph 3 does not have that same restriction. [Resp. to Mtn to Stay Costs, R. 204, Page ID # 10023].

Therefore, under Michigan contract law, the right to recover any costs of enforcement must be limited to the specific procedures and circumstances detailed in Paragraphs 14 and 25, not the general indemnity clause of Paragraph 3. The District Court erred insofar as it found that Paragraph 3 allows State Farm to recover costs associated with its motions to enforce the Settlement Agreement.

2. State Farm's Costs From Its Enforcement Motions Are Not Sums Incurred to Obtain Dismissal of the *Qui Tam* Action

The enforcement motions do not satisfy the conditions of Paragraph 3 because State Farm has not "obtain[ed] dismissal" of the *Qui Tam* Action and, according to State Farm and the District Court, dismissal was **not** the objective of State Farm's motions. As the District Court recognized, the voluntary dismissals in the *Qui Tam* Action were "partial" as they left "intact the claims of Angelo's co-relator…. [The] co-relator at present continues the litigation against State Farm." [Order Awarding Fees and Costs, R.197, Page ID # 9113, 9120]. The plain, unambiguous language of Paragraph 3 covers "sums incurred in defending or obtaining dismissal." [Settlement Agreement, R. 196-1, ¶3]. It does not say "sums incurred in defending or *trying to obtain* dismissal."[13]

Additionally, in rejecting Angelo's argument that State Farm has not prevailed because it did not achieve its goal of dismissal, the District Court found instead that "State Farm has steadily pursued in this litigation the enforcement of rights owed to it under the parties' settlement agreement." [Order Awarding Fees and Costs, R.197, Page ID # 9118]. Despite the fact that Angelo's co-relator in the *Qui Tam* Action "continues the litigation against State Farm," the District Court found that "State

---

[13] Further, insofar as the Court finds the clause ambiguous, the context suggests that Paragraph 3 is contemplating costs incurred in the defense of such a case, while other sections of the Settlement Agreement address costs associated with an enforcement action.

Farm got what it came for." [*Id.*]. If State Farm has not been dismissed but still "got what it came for," then it defies logic to hold that "what it came for" was dismissal. Therefore, since the motions to enforce were not brought to "obtain dismissal" the costs incurred therein do not qualify under Paragraph 3.

## III.    STATE FARM IS NOT THE PREVAILING PARTY

The district court's adoption of State Farm's (erroneous) legal assertions, without any material alteration in the relations of the Parties, did not render State Farm a "prevailing party" as understood in the context of attorney fees.

The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1983). Additionally, "this change must be marked by judicial imprimatur." *CRST Van Expedited, Inc., v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (citing *Buckhannon*, 532 U.S. at 598); *see also Universal Fid. LP v. United States*, 70 Fed. Cl. 310, 314 (2006) ("The essential test established by *Buckhannon* requires the plaintiff to achieve a judicially sanctioned change in the legal relationship."). As demonstrated below, the District Court's analysis is woefully inconsistent with controlling precedent.

The District Court reasoned that "State Farm got what it came for", taking "the ultimate form of a request for consent to dismiss", though correctly recognizing that success alone is insufficient, and "[t]he question becomes, now, whether this

success supports a prevailing party designation." [Order Awarding Fees & Costs, R. 197, Page ID #9118). The District Court ultimately found:

> [T]he relief secured must modify the offending party's behavior so as to directly benefit the relieved party. Such a behavior change has occurred here. Angelo is no longer allowed to freely pursue State Farm in the qui tam suit…. As such, State Farm is a prevailing party for purposes of this case.

[*Id.*, Page ID # 9119]. According to the District Court, the material changes in the legal relationship and correlating direct benefits were the discontinuation of Angelo's ability to freely pursue State Farm in the Q*ui Tam* Action. However, that change was *not* judicially sanctioned, and the perceived benefit lacks sufficient directness. *See McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010) ("Absent a direct benefit, the plaintiff achieves only a symbolic victory.").

The District Court's order is not a "court-ordered change" terminating Angelo's pursuit of State Farm. *Sole v. Wyner*, 551 U.S. 74, 86 (2007). If Angelo is barred from continuing his pursuit, such change is entirely bereft of any judicial imprimatur. For one, the District Court lacks authority to effectuate the purported change.[14] It acknowledged as much when stating, "if the government decides not to consent to dismissal, then that is the end of the matter. The court lacks authority under the FCA to mandate anything further." [First Injunctive Order, R. 149, Page

---

[14] If any court possesses sufficient imprimatur to effectuate the purported change, it is the one presiding over the Q*ui Tam* Action, not the District Court. To date, the Q*ui Tam C*ourt has made no such determination.

ID # 8078–88). Indeed, Angelo's continued pursuit is entirely within the purview of the federal and various state governments. And it is of no moment that these governmental bodies—all *non-judicial* entities—*voluntarily* filed notices of partial consent weeks after Angelo's request, as nothing in *Buckhannon*, nor its progeny, permits "attorney's fees for a non-judicial alteration of actual circumstances." *Tinman ex. rel. Tinman v. Blue Cross & Blue Shield of Mich.*, 2012 WL 3870643, at *11–12 (Mich. Ct. App. Sept. 6, 2012) (quoting *Buckhannon*, 532 U.S. at 606). That is precisely what the District Court did here by awarding fees to State Farm.

At most, State Farm's efforts and the District Court's order indirectly caused or instigated the consideration of government (*non-judicial*) bodies who subsequently, yet voluntarily, filed partial consent notices. That is insufficient. *See Buckhannon*, 532 U.S. at 606 ("Never have we awarded attorney's fees for a nonjudicial alteration of actual circumstances.").[15]

Following *Buckhannon*, this Court explicitly rejected awarding prevailing party status based on similar causal links lacking judicial imprimatur (*i.e.*, the catalyst theory). *See Chambers v. Ohio Dep't of Hum. Servs.*, 273 F.3d 690, 693 (6th Cir. 2001) ("[T]he [*Buckhannon*] Court categorically rejected the catalyst theory as

---

[15] Importantly, even the government's partial consent notices did not change anything, as those notices must first be accepted by the presiding judge in the *Qui Tam* Action, which has not occurred. *See* 31 U.S.C. § 3730(b)(1) ("The action may be dismissed *only if the court* and the Attorney General give written consent to the dismissal and their reasons for consenting.").

a permissible basis for awarding attorney's fees."). Here, whether various *non-judicial* entities may have voluntarily effectuated a legal change in the Parties' relationship that seemingly "accomplished what [State Farm] sought to achieve", nevertheless, "lacks the judicial imprimatur on the change." *Id.* The District Court's finding is, in effect, an application of the catalyst theory, or some form of it, in disregard of controlling precedent.

Moreover, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgement or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 764 (1987). Here, the "benefit" arising from Angelo's inability to "freely pursue State Farm in the *qui tam* suit", was not direct and did not exist at the time of the District Court's order. [Order Awarding Fees & Costs, R. 197, Page ID # 9119]. Rather, it is attributable to the discretionary decisions of *non-judicial* entities, filed weeks later in response to Angelo's request, *not* the District Court's order, and which have yet to be accepted and effectuated by the *Qui Tam* Court. *See McQueary*, 614 F.3d at 598 ("Absent a direct benefit, the plaintiff achieves only a symbolic victory."). Because no *direct* benefit was secured at the time of the District Court's order, the order "cannot be said to affect the behavior of the defendant toward the plaintiff." *Farrar*, 506 U.S. at 111.

State Farm considered the request filed by Angelo as evidence of a material alteration of the legal relationship marked by judicial imprimatur. [Reply in Supp.

of Mot. for Fees & Costs, R. 196, Page ID # 9090). "'[S]uccess alone, however, is not enough' to be entitled to attorney's fees as a 'prevailing party.'" *Y.B. v. Williamson Cnty. Board of Educ.*, 2009 WL 4061311, at *5 (M.D. Tenn. Nov. 20, 2009) (quoting *Tompkins v. Troy Sch. Dist.*, 199 F. App'x 463, 466 (6th Cir. 2006)). And the "mere existence of a court order is not sufficient to establish Plaintiff as a prevailing party."); *DeLeon v. City of Ecorse*, 2007 WL 2259331, at *4 (E.D. Mich. Aug. 3, 2007). Here, the purported success—Angelo filing a request—is trivial, at best. But "[i]n order to be considered the prevailing party, [a party is] required to show at the very least that its position was improved by the litigation." *Talley v. Herzog*, 2019 WL 1645258, at *2 (Mich. Ct. App. Apr. 16, 2019) (quoting *Citizens Ins. Co. of Am. v. Juno Lighting, Inc.*, 247 Mich. App. 236, 247 (2001). Notably, State Farm's position has not improved.[16]

To date, State Farm is litigating three appeals in this matter alone and remains a defendant in the *Qui Tam* Action. Further, without a direct benefit, State Farm's "moral satisfaction from [the District Court's] favorable statement of law cannot bestow prevailing party status." *Farrar*, 506 U.S. at 111. The District Court's order conceded this point. While it found that "State Farm got what it came for", it also "question[ed]…whether this success supports a prevailing party designation."

---

[16] *See Garland*, 489 U.S. at 792 (because State Farm's "success on a legal claim can be characterized as purely technical or *de minimis*, [this Court] would be justified in concluding that [State Farm] has not obtained prevailing party status.").

[Order Awarding Fees & Costs, R. 197, Page ID # 9118]. Simply put, State Farm's feigned success before the District Court, "is not the stuff of which legal victories are made." *Hewitt*, 482 U.S. at 760.

Therefore, because the material alteration, if any, in the legal relationship between the Parties is not the product of judicial imprimatur and lacks a sufficiently direct benefit to State Farm bestowed at the time of the order, State Farm's purported success does not warrant prevailing party status in accordance with controlling precedent. Thus, for the reasons stated above, the District Court erred, as a matter of law.

## IV.    ENFORCING PARAGRAPH 3 TO INDEMNIFY STATE FARM FOR COSTS, FEES, AND LIABILITIES FROM DEFENDING THE *QUI TAM* ACTION DEFIES PUBLIC POLICY

Applying the Settlement Agreement to the *Qui Tam* Action conflicts with important public policy and should not be enforced. The District Court recognized that "it is well-established that 'a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.'" [First Injunctive Order, R. 149, Page ID #8079 (quoting *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987))]. Further, contract interpretation "prefers an interpretation serving the public interest." *U.S. ex rel. Doghramji v. Cmty. Health Sys. Inc.*, 2018 WL 4148840, at *24 n.42 (M.D. Tenn. Aug. 30, 2018). As Judge Stranch explained:

> [T]he courts . . . should approach FCA cases in ways that support and do not stifle the Act's goals and purposes. . . . This is especially true (and particularly complicated) in the massive fraud cases . . . that [involve] finding and proving frauds that operate on a large or national scale, a goal of the FCA. Those are the cases that should be nurtured because they are the type of suits that have returned billions of dollars to the public coffers and have served to deter future fraud.

*U.S. ex. rel. Doghramji v. Cmty. Health Sys., Inc.*, 666 F. App'x 410, 419–20 (6th Cir. 2016) (Stranch, J., concurring).

State Farm seeks indemnity for all costs, fees, and expenses it incurred in defending allegations that they engaged in a nationwide, decades-long scheme to defraud Medicare. Worse still, it argues that the very person who blew the whistle on this fraud must be the indemnitor. However, "[t]he unavailability of contribution and indemnification for a defendant under the False Claims Act [is] beyond peradventure." *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 26 (D.D.C. 2007). The *Miller* court continued:

> If such suits were allowed, they would punish innocent relators, which would be a significant deterrent to whistleblowing and would imperil the government's ability to detect, punish, and deter fraud. The FCA contains several provisions seeking to protect relators from retaliation, and it would run counter to this policy if the Court were to allow retaliatory suits against truthful relators.

*Id.* at 29.

The *Miller* and *Cmty. Health* decisions highlight four related, but distinct, public interests that are implicated here: (1) encouraging whistleblowing, (2) incentivizing relators to act as private attorneys general through fulsome

prosecution of non-intervened *qui tam* cases, (3) protecting relators from retaliation by FCA defendants, and (4) punishing past acts and deterring future fraud. These policies are evident in the text of the FCA, clear in the legislative history, and repeatedly recognized by courts. Each one would be undermined by forcing Angelo, the relator, to indemnify State Farm for its defense costs in the *Qui Tam* Action.

### A. The District Court's Order Conflicts with the Public Policy to Encourage Whistleblowing

The *qui tam* provisions of the FCA are designed to encourage "whistleblowers to act as 'private attorneys general' in pursuit of an important public policy." *U.S., ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*, 188 F.3d 510 (6th Cir. 1999) (quoting *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1042 (6th Cir. 1994)). Allowing "extra barriers and disincentives for whistleblowers to report fraud [does not] comport with Congressional intent, which is that whistleblowers aggressively 'fish' for evidence of fraud on behalf of the government." *U.S. ex rel. Fry v. Health All. of Greater Cincinnati*, 2009 WL 1324164, at *3 (S.D. Ohio May 12, 2009).[17]

Courts routinely acknowledge the rule prohibiting an FCA defendant from seeking indemnification—or pursuing claims that have the same effect—against a

---

[17] In *qui tam* lawsuits, "serious public interests are at stake, to wit, the interest of the taxpayers and the government in recouping lost proceeds." *U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1046 (S.D.N.Y. 1996).

relator. "The reason for the rule is simple to understand; without it, relators would be discouraged from bringing suit, thereby 'imperil[ing] the federal interests which the FCA seeks to vindicate.'" *U.S. ex rel. Nehls v. Omnicare, Inc.*, 2013 WL 3819671, at \*20 (N.D. Ill. July 23, 2013) (quoting *Miller*, 505 F. Supp. 2d at 26). Moreover, the FCA itself "includes explicit provisions for reducing the award to a relator with 'unclean hands,'…as well as a provision allowing for the recovery of attorney fees, but only if the defendant prevails and the court finds that the FCA claim was frivolous." *Id.* (citing 31 U.S.C. § 3730(d)(3), (4)); *see also X Corp. v. Doe,* 805 F. Supp. 1298, 1310 n.24 (E.D. Va. 1992) ("To the extent it prevented disclosure of evidence of a fraud on the government, [the confidentiality agreement] would be void as contrary to public policy. In other words, [the plaintiff] cannot rely on any contract to conceal illegal activity."). That is, "claims for contribution and indemnification against relators would not only 'frustrate [t]he FCA's purpose of encouraging whistleblowing,'" *Nehls*, 2013 WL 3819671, at \*20 (quoting *U.S. ex rel. Vainer v. Davita, Inc.,* 2013 WL 1342431, at \*4 (N.D. Ga. Feb. 13, 2013)), "but also 'upset the carefully calibrated framework under which relator compensation is to be figured'", *id.* (quoting *Miller,* 505 F. Supp. 2d at 26).

Here, the District Court previously found that the "settlement agreement does not frustrate the incentive of individuals to reveal fraudulent conduct to the government considering [Angelo] had already done so." (First Injunctive Order, R.

39

149, Page ID # 8079). But this misses the point altogether. Private agreements preventing a relator from disclosing allegations of fraud and cooperating with the Government and creating "extra barriers and disincentives for whistleblowers to report fraud," such as the threat of indemnification, conflicts with explicit public policy. *Fry*, 2009 WL 1324164, at *3.

Further, the Settlement Agreement was signed *before* the Government completed its investigation and allowed the seal to be lifted. [*Qui Tam* Docket, ECF Nos. 22, 24]. However, the District Court found that "under the terms of the parties' settlement agreement Angelo should never have continued pursuing the *qui tam* action after February 19, 2021. Thus, he is contractually obligated to indemnify State Farm as it defends itself and its affiliates in the *qui tam* case." [Order Awarding Fees & Costs, R. 197, Page ID # 9120]. In other words, the District Court found that Angelo should have stopped cooperating with the Government, ceased to provide evidence and conduct research, and stood silent as the Government requested further information. This undermines the purpose and strong public interest of the FCA.

### B. The District Court's Order Conflicts with the Public Policy to Deputize Relators and Encourage Fulsome Private Prosecution

The explicit public policies of the FCA do not end once a relator reports alleged fraud. Rather, "'Congress has let loose a posse of *ad hoc* deputies to uncover and **prosecute** frauds against the government.'" *Taxpayers Against Fraud*, 41 F.3d at 1042 (quoting *U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961

F.2d 46, 49 (4th Cir. 1992)) (emphasis added). As happened here, relators are fully empowered under the FCA to prosecute a case even after the Government declines to intervene. In fact, Congress increased the monetary incentive for relators in those circumstances by adjusting the percentage a relator can recover, from 15 to 25 percent when the Government intervenes, to 25 to 30 percent in a non-intervened case. *See* 31 U.S.C. § 3730(d)(1)–(2). This incentive is only compounded by the mandatory award of attorney's fees and costs to a successful relator, ensuring that relators and their counsel are motivated to expend the significant effort these cases often require. *Id.*

As Judge Stranch observed, "providing…evidence is just the beginning." *Cmty. Health Sys.*, 666 F. App'x at 420 (Stranch, J., concurring). The goal of the *qui tam* provision is "to increase the recovery of public monies [which] will be impacted if relators [and their] counsel are…not paid for [prosecuting the case]." *Id.*[18] It is undisputed that the Government has limited resources, and "there is 'little purpose' to [the] *qui tam* framework if [the] government is forced to pursue all meritorious

---

[18] Judge Stranch continued:

> Without a doubt, relators and their attorneys play a vital role in rooting out . . . fraud and obtaining recovery of the public monies that were intended to be spent for providing health care to veterans and poor, elderly, and disabled citizens. Fostering such recoveries under the FCA must include recognition that these actions are not without economic risks and other dangers to relators and their counsel.

*Id.*

claims." *Health Possibilities, P.S.C.*, 207 F.3d at 343 n.6 (citing *U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1458 (4th Cir. 1997)).

Indeed, the Supreme Court observed that *qui tam* relators "are motivated primarily by prospects of monetary reward." *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 949 (1997). The FCA's *qui tam* feature and the availability of treble damages serve "to quicken the self-interest of some private plaintiff who can spot violations and start litigating to compensate the Government, while benefitting himself as well." *Cook Cnty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 131 (2003).[19] Allowing a *qui tam* defendant to "pursue claims that have the effect of contribution or indemnification…would undermine the intended framework of the FCA to encourage relators" to pursue FCA claims on the government's behalf. *Chattanooga-Hamilton Cnty. Hosp. Auth. v. Xerox Corp.*, 2017 WL 2637745, at *8 (E.D. Tenn. June 19, 2017).

In *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, the defendant suggested that a separate contractual release it signed with relator "is only effective as to [the relator], and it would not object to dismissal without prejudice to allow the

---

[19] *See also Miller v. Holzmann*, 575 F. Supp. 2d 2, 8 (D.D.C. 2008), *amended in part, vacated in part sub nom. U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011) ("The *qui tam* provisions enlist private individuals, often motivated largely by self-interest, to report and **prosecute** alleged false claims. Those provisions seek to strike a balance between the interests of the government and the self-interest of relators.") (emphasis added).

Government to take over the case." 96 F. Supp. 3d 504, 516 (E.D. Pa. 2015). But the court rejected this proposal because "it ignores the clear congressional intent of encouraging private enforcement of the FCA." *Id.*

This Court in *U.S. ex rel. Bryant v. Cmty. Health Sys., Inc.* recognized the clear Congressional intent to incentivize private prosecution of fraud:

> In the face of sophisticated and widespread fraud, the Committee believes only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds. [The FCA] increases incentives, financial and otherwise, for private individuals to bring suits on behalf of the Government.

24 F.4th 1024, 1035 (6th Cir. 2022) (quoting S. Rep. No. 99-345, at 2 (1986)).

This incentive has been extremely successful. In 2022, relators recovered nearly $1.2 billion dollars for the government in cases where the government declined to intervene.[20] That amounts to 54 percent of the government's total FCA recoveries—*qui tam* and non-*qui tam*—for the year.[21]

Enforcing the Settlement Agreement by requiring Angelo to indemnify State Farm turns this incentive on its head. Not only does it neutralize a relator's motivation, but instead begs the relator to sabotage or otherwise work against the government's interest. The District Court found that Angelo is liable because he

---

[20] *See* U.S. Dep't of Just., *False Claims Act Settlements and Judgments Exceed $2 Billion in Fiscal Year 2022* (Feb. 7, 2023), https://www.justice.gov/opa/pr/false-claims-act-settlements-and-judgments-exceed-2-billion-fiscal-year-2022.
[21] *Id.*

"should never have continued pursuing the *qui tam* action." [Order Awarding Fees & Costs, R. 197, Page ID # 9120]. Meaning he should never have continued to cooperate with the government, never should have cooperated with a co-relator, never should have filed an amended complaint, and never should have filed a response to State Farm's motion to dismiss. Such a result undeniably conflicts with public policy.

### C. The District Court's Order Conflicts with the Public Policy to Protect Whistleblowers

In deputizing relators, there is a clear and important public interest in protecting relators from suffering for their role in advancing the government's interests. Allowing a *qui tam* defendant to bring "such a claim would place affirmative duties on a relator that the FCA does not envision. It also would create the perverse result of making a truthful relator pay to offset the liability of a wrongdoing FCA defendant." *Miller*, 505 F. Supp. 2d at 29; *see also U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1039 (C.D. Cal. 2012) ("Obviously, the strong public policy" of protecting whistleblowers who report fraud "would be thwarted if [the defendant] could silence whistleblowers[.]").

A private agreement between the parties "cannot trump the FCA's strong policy of protecting whistleblowers who report fraud against the government…. It makes no difference whether we view defendant's counterclaim to be based on [a contractual breach] or in retaliation to the *qui tam* claim." *U.S. ex rel. Grandeau v.*

*Cancer Treatment Centers of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004). Courts must not "penalize the relator for doing what he or she is obliged to do in order to continue the suit." *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 561 (C.D. Cal. 2003).

To be sure, the FCA does allow a *qui tam* defendant to be awarded fees, however "the purpose of the statutory scheme…[is that] fees can only be awarded if the plaintiff's action is deemed frivolous." *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 n.14 (9th Cir. 2017).[22] The "costs of defending the qui tam action…are 'independent' in the sense that they will be incurred whether or not defendant is found liable for an FCA violation…. [But] the FCA provides a specific remedy which sets a high standard for recovery [of costs and fees]." *U.S. ex rel. Battiata v. Puchalski*, 906 F. Supp. 2d 451, 460 n.6 (D.S.C. 2012). This suggests that "recovery of fees may only be allowed if the statutory standard is met." *Id*.

This is a high bar which Congress has explicitly enacted. Forcing Angelo to indemnify State Farm directly conflicts with this statutory purpose. In fact, even

---

[22] *See also U.S. ex rel. Wildhirt v. AARS Forever, Inc.*, 2013 WL 5304092, at *6 (N.D. Ill. Sept. 19, 2013) (allowing contractual counterclaim for fees and expenses only if Defendant satisfies the elements under § 3730(d)(4)); 31 U.S.C. § 3730(d)(4) ("If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.").

when the relator has "unclean hands" for participating in the fraud, Congress "in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against [relators]." *Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev.*, 934 F.2d 209, 213 (9th Cir. 1991). The court in *U.S. ex rel. Head v. Kane Co.* dismissed defendant's claim for contractual indemnification because it sought "to hold [relator] liable for any damages arising from the pending FCA claims." 668 F. Supp. 2d 146, 154 (D.D.C. 2009). Whether the FCA arose from relators "willful misconduct or from his having breach the Separation Agreement, liability for violations of the FCA may not be shifted to the relator." *Id.*

The District Court's finding that Angelo is "contractually obligated to indemnify State Farm as it defends itself and its affiliates in the *qui tam* case" directly contravenes the policy to protect whistleblowers from being penalized for advancing the government's interest. [Order Awarding Fees & Costs, R. 197, Page ID # 9120]. This is reversible error, and the Settlement Agreement should be held unenforceable as to the *Qui Tam* Action.

### D. The District Court's Order Conflicts with the Public Policy to Punish FCA Defendants and Deter Future Fraud

Finally, "it is well-settled that the [FCA], which includes a treble damages provision, also has the distinct public policy purpose of punishing and deterring fraud committed upon the national treasury." *U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 288 (E.D.N.Y. 2006); *see also Chandler,* 538 U.S. at 130

(Damages for FCA claims "have a compensatory side, serving remedial purposes in addition to punitive objectives."); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 784–86 (2000) ("[T]he current version of the FCA imposes damages that are essentially punitive in nature…. 'The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.'" (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639 (1981))); *Miller*, 575 F. Supp. 2d at 8 ("The [FCA] seeks, first and foremost, to detect, punish, and deter the submission of false claims, while seeking to restore funds to the federal fisc.").

The Third Circuit in *U.S. ex rel. Charte v. Am. Tutor, Inc.* rejected attempts to preclude a *qui tam* action based on an earlier, private settlement between the parties because doing so would "give potential defendants a path toward immunizing themselves against [FCA] liability." 934 F.3d 346, 353 (3d Cir. 2019); *see also In re Commonwealth Cos., Inc.*, 913 F.2d 518, 526 (8th Cir. 1990) ("[C]ivil actions…to enforce the FCA serve to inflict the 'sting of punishment' on wrongdoers and, more importantly, deter fraud against the government, which Congress has recognized as a severe, pervasive, and expanding national problem.").

Allowing State Farm to "immunize" itself against the "sting of punishment" by forcing Angelo to completely indemnify it contradicts the very purpose of the FCA. At every turn, the District Court's order enforcing the Settlement Agreement

47

to the *Qui Tam* Action nullifies clear public policy that Congress has repeatedly reiterated and strengthened through amendments to the FCA.

## CONCLUSION

Based on the foregoing, Appellant respectfully requests this Honorable Court **REVERSE** the District Court's orders and **REMAND**.

Respectfully submitted,

By: */s/Shereef H. Akeel*
SHEREEF H. AKEEL (P54345)
ADAM S. AKEEL (P81328)
SAMUEL R. SIMKINS (P81210)
EMAD R. HAMADEH (P86840)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
shereef@akeelvalentine.com
adam@akeelvalentine.com
sam@akeelvalentine.com
emad@akeelvalentine.com
*Counsel for Defendant-Appellant*

Dated: December 11, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Appellant certifies pursuant to Fed. R. App. P. 32(g)(1) that the Brief of Appellant complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman font in 14-point size, with footnotes in Times New Roman font, 14-point size.

This Brief contains 12,568 words including footnotes and excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

Respectfully submitted,

By: */s/ Adam S. Akeel*

No. 23-1918
_____

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT
_____


**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Plaintiff-Appellee**

**v.**

**MICHAEL ANGELO, Defendant-Appellant**

**ORTHOPEDIC, P.C., et al., Defendants**
_____

On Appeal from the United States District Court
For Eastern District of Michigan, Southern Division
Hon. Robert H. Cleland
19-10669

_____

### ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT
### DOCUMENTS


R.1, State Farm Complaint

R.118, State Farm Motion to Enforce Settlement Agreement and Release Against
   Angelo, Page ID #6663, 6666, 6668, 6696

R.118-2, Redacted Settlement Agreement, Page ID #6704, 6706-08

R.118-3, *Qui Tam* Complaint, Page ID #6718, 6720-21, 6737-39, 6767-70

R.118-4, April 13, 2021 State Farm Correspondence

R.125-1, Unredacted copy of Settlement Agreement, Page ID #7094-95

R.126, Angelo Response to First Motion to Enforce Settlement Agreement, Page
   ID #7137-38, 7144-55

R.130, State Farm Reply in Support of First Motion to Enforce Settlement
Agreement

R.145-1, Amended *Qui Tam* Complaint, Page ID #7761-68, 7784-85, 7859, 7885-
86

R.146, Angelo Response to State Farm Supplemental Brief in Support of Enforcing
Settlement Agreement, Page ID #8013

R.149, District Court First Injunctive Order to Enforce Settlement Agreement,
Page ID #8067, 8071-73, 8072-81

R.157, District Court Second Injunctive Order to Enforce Settlement Agreement,
Page ID #8293, 8296-99, 8300-01

R.158, Angelo Notice of Appeal

R.160, Angelo Emergency Motion to Stay Pending Appeal of First Injunctive
Order

R.161, District Court Order Denying Angelo Emergency Motion to Stay

R.162, First Declaration by Shereef Akeel

R.163, State Farm Second Motion to Enforce Settlement Agreement, Page ID
#8348-49

R.165, Angelo Response to State Farm Second Motion to Enforce Settlement
Agreement, Page ID #8372-76, 8382-83

R.165-2, Nov. 2020 Email Exchange with Between Mr. Akeel and Government,
Page ID #8394, 8401

R.165-4, May 16 Email Between Mr. Akeel and AUSA Postulka

R.171, Second Declaration by Shereef Akeel, Page ID #8607

R.171-1, Second Government Confirmation Denying Consent to Dismiss State
Farm, Page ID #8608

R.172-2, *Qui Tam* Action – Unsealing Order

R.172-4, *Qui Tam* Action – Amended Unsealing Order

R.174, Motion Hearing Transcript, Page ID #8667-68, 8674-76, 8681-8709, 8718-
21

R.175-3, *Qui Tam* Action Proposed Second Amended Complaint Excerpt, Page ID
#8755

R.176, District Court Third Injunctive Order to Enforce Settlement Agreement,
Page ID #8851, 8855, 8857-58, 8860, 8862

R.177, Angelo Emergency Motion to Stay Pending Appellate Review and
Reconsideration

R.178, Angelo Motion for Reconsideration

R.178-2, March 2023 Email Exchange with Government, Page ID #8916-17

R.179, District Court Order granting, in part, Angelo Motion to Stay

R.181, District Court Fourth Injunctive Order to Enforce Settlement Agreement, Page ID #8968, 8973-77

R.186, Angelo Notice of Appeal re Order Denying Motion for Reconsideration

R.188, Order from U.S. Court of Appeals – Sixth Circuit – Granting Administrative Stay

R.194, State Farm Motion for Attorney Fees and Costs

R.195, Angelo Response to State Farm Motion for Attorney Fees and Costs

R.196, State Farm Reply in Support of Motion for Fees and Costs

R.196-1, Settlement Agreement

R.197, Order Awarding Fees and Costs

R.198, State Farm Bill of Fees and Costs

R.201, Notice of Appeal

R.203, Angelo Motion to Stay Proceedings

R.205, Angelo Reply in Support of Motion to Stay Proceedings

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 11th day of December 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Respectfully submitted,

By: */s/Samuel R. Simkins*