No. 23-1918

IN THE
UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
————————————————

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

MICHAEL ANGELO,

*Defendant-Appellant,*

and

ORTHOPEDIC P.C., ET AL.

*Defendants*.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

HON. ROBERT H. CLELAND[1]
NO. 19-CV-10669
————————————

**PLAINTIFF-APPELLEE STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY'S BRIEF ON APPEAL**
————————————

MILLER, CANFIELD, PADDOCK AND STONE, PLC
Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
Caroline B. Giordano (P76658)
840 W. Long Lake Road, Suite 150
Troy, MI 48098
Telephone: 248.267.3381
cranmer@millercanfield.com
allen@millercanfield.com
giordano@millercanfield.com

*Counsel for Plaintiff-Appellee State Farm Mutual Automobile Insurance Company*

————————————

[1] On September 14, 2023, the case was reassigned to Hon. Nancy G. Edmunds following Judge Cleland's retirement.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................ ii

I.     STATEMENT REGARDING ORAL ARGUMENT ................................. viii

II.    STATEMENT OF JURISDICTION ............................................. ix

III.   STATEMENT OF ISSUES PRESENTED ....................................... x

IV.    INTRODUCTION ............................................................ 1

V.     STATEMENT OF THE CASE .................................................. 3

       A.   SFMAIC and Angelo Enter a Settlement to Resolve This RICO
            Action Relating to a Wide-Ranging Fraud Scheme ........................... 3

       B.   Angelo Breaches the Settlement Agreement by Failing to Take
            Steps to Secure the Discontinuance of a Covered Lawsuit,
            Setting Off Months of Enforcement Efforts ............................... 5

       C.   The District Court Requires Angelo to File a Request for
            Consent in the *Qui Tam* Action, and the District Court
            Thereafter Awards SFMAIC Its Attorney Fees ............................ 7

VI.    SUMMARY OF THE ARGUMENT ............................................. 9

VII.   ARGUMENT ................................................................ 11

       A.   STANDARD OF REVIEW AND RULE AGAINST
            CONSIDERATION OF FORFEITED ARGUMENTS .................... 11

       B.   ANGELO AGREED TO PAY SFMAIC'S FEES AND COSTS
            INCURRED TO ENFORCE THE SETTLEMENT
            AGREEMENT ....................................................... 12

            1.   The District Court Considered the Language of
                 Paragraphs 14 and 25 and Correctly Found Paragraph 25
                 Entitles SFMAIC to Costs and Fees ............................ 12

            2.   The District Court Correctly Found SFMAIC Is a
                 Prevailing Party For Purposes of Paragraph 25 ................... 19

       C.   ANGELO ALSO AGREED TO PAY SFMAIC'S FEES AND
            COSTS INCURRED AS A RESULT OF ANGELO'S
            FAILURE TO DISCONTINUE THE QUI TAM ACTION ............. 24

            1.   SFMAIC Is Entitled to Its Enforcement Costs and Fees
                 Pursuant to Paragraph 3 ...................................... 24

2.    The District Court Correctly Determined SFMAIC Is Entitled to Its *Qui Tam* Action Defense Costs and Fees Pursuant to Paragraph 3 ........................................................... 27

a.    Angelo Failed to Raise a Public Policy Argument to the District Court Even Though SFMAIC Requested *Qui Tam* Action Defense Costs in Its Fee Motion ......................... 28

b.    Angelo Has Not Invoked and Cannot Meet the Standard for This Court's Discretionary Review, and, Regardless, His Arguments Are Unavailing ................................................ 31

D.    THE DISTRICT COURT'S ATTORNEY FEE AWARD IS ALSO APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY ............................................................................ 40

VII.    CONCLUSION ............................................................................ 42

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Auto Owners Ins. Co. v. Seils*,
  871 N.W.2d 530 (Mich. Ct. App. 2015)..............................................................16

*Bannister v. Knox Cty. Bd. of Educ.*,
  49 F.4th 1000 (6th Cir. 2022) ...................................................................*passim*

*Brown v. Tidwell*,
  169 F.3d 330 (6th Cir. 1999) .............................................................................40

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &*
  *Hum. Res.*, 532 U.S. 598 (2001) .......................................................19, 20, 22, 23

*Cell Therapeutics, Inc. v. Lash Grp., Inc.*,
  586 F.3d 1204 (9th Cir. 2009), *as amended* (2010) ..............................32, 33, 38

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..............................................................................................40

*Chambers v. Ohio Dep't of Hum. Servs.*,
  273 F.3d 690 (6th Cir. 2001) .......................................................................23, 41

*Chattanooga-Hamilton Cty. Hosp. Auth. v. Xerox Corp.*,
  No. 1:16-CV-496, 2017 WL 2637745 (E.D. Tenn. June 19, 2017) ..................34

*Clark v. Al-Amin*,
  872 N.W.2d 730 (Mich. Ct. App. 2015)............................................................12

*CRST Van Expedited, Inc. v. E.E.O.C.*,
  578 U.S. 419 (2016)....................................................................................19, 20

*DeFrain v. State Farm Mutual Automobile Insurance Co.*,
  817 N.W.2d 504 (Mich. 2012)...........................................................................26

*Elizabeth A. Silverman, PC v. Korn*,
  984 N.W.2d 536 (Mich. Ct. App. 2021)............................................................13

*Farrar v. Hobby*,
   506 U.S. 103 (1992)................................................................19, 21, 23

*Friendly Farms v. Reliance Ins. Co.*,
   79 F.3d 541 (6th Cir. 1996) ...............................................................31

*Gen. Med., P.C. v. Azar*,
   963 F.3d 516 (6th Cir. 2020) .............................................................31

*Gonter v. Hunt Valve Co.*,
   510 F.3d 610 (6th Cir. 2007) .............................................................11

*Graceland Fruit, Inc. v. KIC Chemicals, Inc.*,
   320 F. App'x 323 (6th Cir. 2008) ......................................................11

*Gramer v. Gramer*,
   523 N.W.2d 861 (Mich. Ct. App. 1994)............................................12

*Hayward v. Cleveland Clinic Found.*,
   759 F.3d 601 (6th Cir. 2014) .............................................................11

*Holland v. Trinity Health Care Corp.*,
   791 N.W.2d 724 (Mich. Ct. App. 2010)............................................16

*Kansas v. Garcia*,
   140 S. Ct. 791 (2020).........................................................................36

*Keene Corp. v. United States*,
   508 U.S. 200 (1993)...........................................................................17

*Kulak v. City of Birmingham*,
   No. 258905, 2006 WL 954178 (Mich. Ct. App. Apr. 13, 2006) ........18

*Letherer v. Alger Grp., L.L.C.*,
   328 F.3d 262 (6th Cir. 2003) .............................................................18

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
   679 F.3d 410 (6th Cir. 2012) .............................................................19

*Memphis A. Philip Randolph Inst. v. Hargett*,
   No. 22-5207, 2023 WL 411381 (6th Cir. Jan. 26, 2023) ............39, 40

*Metz v. Unizan Bank*,
    655 F.3d 485 (6th Cir. 2011) ..............................................................40

*Mortgages, Inc. v. U.S. District Court for District of Nevada*,
    934 F.2d 209 (9th Cir. 1991) ..............................................................32

*Murray v. City of Columbus, Ohio*,
    534 F. App'x 479 (6th Cir. 2013) ......................................................41

*NPF Franchising, LLC v. SY Dawgs, LLC*,
    37 F.4th 369 (6th Cir. 2022) ..............................................................41

*Philip Carey Mfg. Co. v. Taylor*,
    286 F.2d 782 (6th Cir. 1961) ..............................................................18

*PNC Bank, N.A. v. Legal Advoc., P.C.*,
    841 F. App'x 755 (6th Cir. 2020) ......................................................11

*Pransky v. Falcon Grp., Inc.*,
    874 N.W.2d 367 (Mich. Ct. App. 2015).....................................13, 14

*Progressive Foods, LLC v. Dunkin' Donuts, Inc.*,
    491 F. App'x 709 (6th Cir. 2012) ......................................................11

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*,
    666 N.W.2d 251 (Mich. 2003)............................................................13

*Rory v. Cont'l Ins. Co.*,
    703 N.W.2d 23 (Mich. 2005)..............................................................16

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008) ..............................................................12

*Senju Pharmaceutical Co. v. Apotex Inc.*,
    746 F.3d 1344 (Fed. Cir. 2014) ........................................................17

*Swanigan v. FCA US LLC*,
    938 F.3d 779 (6th Cir. 2019) ..............................................11, 14, 15

*Thompson v. Parker*,
    867 F.3d 641 (6th Cir. 2017) ..............................................................31

*U.S. ex rel. Burch v. Piqua Eng'g, Inc.*,
   145 F.R.D. 452 (S.D. Ohio 1992) ........................................................35

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...........................................................36

*U.S. ex rel. Doe v. X Corp.*,
   862 F. Supp. 1502 (E.D. Va. 1994) ....................................................35

*U.S. ex rel. Madden v. General Dynamics Corp.*,
   4 F.3d 827 (9th Cir. 1993) ....................................................32, 35, 37

*U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*,
   835 F. Supp. 2d 341 (E.D. Mich. 2011) ........................................37, 38

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
   505 F. Supp. 2d 20 (D.D.C. 2007)......................................................33

*U.S. ex rel. Polansky v. Exec. Health Res., Inc.*,
   599 U.S. 419 (2023)..........................................................................32

*U.S. ex rel. Ritchie v. Lockheed Martin Corp.*,
   558 F.3d 1161 (10th Cir. 2009) .........................................................37

*U.S. ex rel. Salvatore v. Fleming*,
   No. 11-CV-1157, 2015 WL 1326330 (W.D. Pa. Feb. 24, 2015) .......................34

*U.S. ex rel. Scott v. Metropolitan Health Corp.*
   234 F. App'x 341 (6th Cir. 2007) ..................................................33, 34

*United States v. Angelo, et al.*,
   No. 20-20599 (E.D. Mich.).................................................................4

*United States v. Angelo, et al.*,
   No. 22-20188 (E.D. Mich.).................................................................4

*United States v. Health Possibilities, P.S.C.*,
   207 F.3d 335 (6th Cir. 2000) .......................................................30, 31

*United States v. Quest Diagnostics Inc.*,
   734 F.3d 154 (2d Cir. 2013) ..............................................................35

*Virginia Uranium, Inc. v. Warren*,
  139 S. Ct. 1894 (2019) ..........................................................36

**Statutes**

31 U.S.C. § 3730(b)(2) ............................................................37

31 U.S.C. § 3730(b)(4)(B) ......................................................37

31 U.S.C. § 3730(d)(3) & (d)(4) .............................................34

**Court Rules**

Fed. R. Civ. P. 41 ...................................................................18

## I.  <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case presents a straightforward application of the plain language of a written Settlement Agreement between Plaintiff State Farm Mutual Automobile Insurance Company ("<u>SFMAIC</u>") and Defendant Michael Angelo ("<u>Angelo</u>"). Based on that clear text, the district court granted SFMAIC its attorney fees and costs incurred in enforcing the Settlement Agreement and as a result of Angelo's failure to secure the discontinuance of a pending lawsuit covered by the settlement. As such, SFMAIC does not believe that oral argument is necessary. If the Court would be aided by oral argument, SFMAIC would be pleased to participate to further explain why the district court's order is correct and why Angelo is liable for SFMAIC's attorney fees and costs.

## II.   <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction over SFMAIC's original claims in the underlying lawsuit under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over SFMAIC's state-law fraud and unjust enrichment claims under 28 U.S.C. § 1367. The district court independently had jurisdiction over SFMAIC's underlying claims under 28 U.S.C. § 1332(a). The district court retained jurisdiction to enforce the settlement agreement between SFMAIC and Angelo. (RE 114, Page ID ## 6174, 6176).

The district court entered an order on September 14, 2023, granting SFMAIC's motion for attorney fees and costs (RE 197). Angelo filed a notice of appeal of the September 14, 2023 order on October 13, 2023 (RE 201). By appealing, Angelo necessarily deems the district court's order as final and, moreover, Angelo expressly invokes this Court's appellate jurisdiction under 28 U.S.C. § 1291. On February 1, 2023, in furtherance of his contention that the order and attendant Bill of Costs are final and thus appealable, Angelo argued exactly that to this Court in related Cases 22-1409 and 23-1450, admitting at oral argument: "Most recently, the district court in this case ordered Angelo to pay $1.2 million . . . ." *See* Recording of Oral Argument, "22-1409 23-1340 State Farm Mutual Auto Ins Co v Michael Angelo": https://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php).

# III.    STATEMENT OF ISSUES PRESENTED

1.    As part of a Confidential Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), Angelo agreed to pay SFMAIC's attorney fees and costs incurred to enforce Angelo's obligations under that Agreement. The district court granted two motions by SFMAIC seeking to compel Angelo to take steps necessary to secure the discontinuance of a *qui tam* lawsuit arising from services covered by the Settlement Agreement: claims for healthcare treatment and services under no-fault auto insurance policies. When Angelo finally took the steps he promised to take under the Settlement Agreement, SFMAIC sought its attorney fees and costs.

    Did the district court err in concluding that SFMAIC was entitled to its fees and costs for its enforcement efforts under the Settlement Agreement's attorney fee provisions in Paragraphs 14 and 25?

        SFMAIC says: No.

2.    As a direct result of SFMAIC's months-long efforts to enforce the Settlement Agreement, the district court directed Angelo to file, and Angelo ultimately filed, a written request seeking the Government's consent to dismiss his claims in the *qui tam* lawsuit he had been pursuing against SFMAIC. Did the district court err in concluding that SFMAIC's success was a consequential enough benefit for SFMAIC to qualify as a "prevailing party" for purposes of an award under Paragraphs 14 and 25?

        SFMAIC says: No.

3.    Under Paragraph 3 of the Settlement Agreement, Angelo separately agreed to pay SFMAIC's costs and fees incurred as a result of Angelo's failure to seek the discontinuance or dismissal of any pending claims against SFMAIC covered by the Settlement Agreement. Did the district court err in concluding that SFMAIC was entitled to its fees and costs under the Settlement Agreement's fee provisions in Paragraph 3?

        SFMAIC says: No.

4.    Despite ample opportunity and being on full notice that SFMAIC sought enforcement and defense costs and fees under Paragraph 3 of the Settlement Agreement, Angelo never raised a public policy concern before

the district court. Has Angelo adequately preserved any argument that the district court's attorney fee award violates public policy?

        SFMAIC says: No.

5.      Angelo repeatedly failed to comply with the district court's order directing him to seek, in good faith, the Government's consent to dismiss the *qui tam* claims. Although the district court did not rely on its inherent authority to award SFMAIC its resulting attorney fees and costs, would such an award have been an abuse of the court's considered discretion and inherent authority?

        SFMAIC says: No.

## IV.    <u>INTRODUCTION</u>

The district court properly granted SFMAIC's Motion for Attorney Fees and Costs. After Angelo failed to comply with his contractual obligation to take the steps necessary to discontinue the *Qui Tam* Action,[2] as he had promised to do under the Settlement Agreement, SFMAIC expended substantial time and effort enforcing the Agreement and defending itself due to Angelo's breaches. The district court granted SFMAIC's motion to enforce the Settlement Agreement and ordered Angelo to take appropriate action.[3] SFMAIC then moved to recover its attorney fees and costs, as expressly provided in the Settlement Agreement.

The Settlement Agreement specifies that SFMAIC is entitled to recover its "costs, including reasonable attorney's fees," to enforce Angelo's obligations under the Agreement and to recover "any fees[] [and] costs" resulting from Angelo's failure to comply with his promise to secure the discontinuance of certain pending claims against SFMAIC. (RE 118-2, Page ID # 6704; RE 196-1, Page ID ## 9107–9108). The district court correctly applied that plain language and awarded SFMAIC its attorney fees and costs.

---

[2] *U.S. ex rel. Angelo v. State Farm Mutual Automobile Insurance Company*, No. 2:19-cv-12165 (E.D. Mich.) (the "*Qui Tam* Action").

[3] Angelo has separately appealed the district court's orders determining that the *Qui Tam* Action falls within the scope of the Settlement Agreement and that the Settlement Agreement required him to take all steps necessary to seek to discontinue that action (*see* Cases 22-1409 and 23-1450). Those appeals remain pending.

Angelo now advances a host of contrary arguments in an attempt to escape the consequences of his own noncompliance with the Settlement Agreement. But Angelo forfeited most of those arguments because he never raised them to the district court. Thus, Angelo's appeal rests largely on new arguments not properly presented to this Court, and which do not warrant discretionary review even if Angelo had requested and attempted to justify that review (he does not).

Regardless, Angelo's counterarguments fail. Angelo assigns error to the district court's fee award because, according to Angelo, Paragraph 14 of the Settlement Agreement only permits fee recovery for newly-filed lawsuits before a different judge than the originally-presiding judge (Hon. Robert H. Cleland) who retained jurisdiction to enforce the Settlement Agreement, and Paragraph 25 must be read to include the same limitation. But that interpretation of the Settlement Agreement is not supported either by the text of the Agreement, which does not require a separate lawsuit, or by logic.

Second, Angelo assigns error to the district court's determination that SFMAIC is a prevailing party for purposes of Paragraph 25. According to Angelo, SFMAIC's win did not benefit SFMAIC or, at most, provided a "trivial" benefit that does not meet the prevailing party standard. Not so. The district court provided a reasoned analysis explaining how the relief SFMAIC obtained through its

2

enforcement efforts met the standard for prevailing party status, and Angelo has not shown that the district court erred.

Further, even setting aside Angelo's arguments about Paragraphs 14 and 25, this Court can and should affirm the award under Paragraph 3 of the Settlement Agreement. SFMAIC sought its fees under Paragraph 3 before the district court, and the district court agreed. Angelo never raised any arguments in opposition and, in fact, did not reference Paragraph 3 even once to the district court.

Finally, this Court could also affirm the award of fees and costs as an appropriate exercise of the district court's inherent authority, based on the district court's finding that Angelo repeatedly failed to comply with its order and Angelo's failure to rebut SFMAIC's arguments on this point before the district court.

This Court should affirm the district court's order (RE 197).

## V.   STATEMENT OF THE CASE

### A.   SFMAIC and Angelo Enter a Settlement to Resolve This RICO Action Relating to a Wide-Ranging Fraud Scheme

SFMAIC filed this RICO Action nearly five years ago, on March 6, 2019, alleging Angelo and his cohorts defrauded SFMAIC by submitting bills under the Michigan No-Fault Act for unnecessary medical and diagnostic services purportedly rendered to patients involved in automobile accidents. (Compl. ¶2, RE 1, Page ID #

1).[4] Angelo and SFMAIC entered into a Settlement Agreement on February 19, 2021. (RE 118-2, Page ID ## 6715–6716).

In the Settlement Agreement, Angelo promised:

[W]ithin seven (7) days of the date this Confidential Agreement is signed, the Michael Angelo Entities[5] shall take all steps necessary to settle, discontinue with prejudice, and to secure the discontinuance of, any lawsuits, arbitrations, appeals, claims, and other proceedings brought by any Michael Angelo Entity pending against [SFMAIC] . . ., in any forum, arising from (a) the allegations asserted or that could have been asserted in the Litigation; and/or (b) MVA Related Health Care Services, as hereinafter defined, provided by any Michael Angelo Entity(s) to any [SFMAIC] Insured on or before the Effective Date, and to waive all rights to all remedies and costs relating to such matters, including attorney's fees. **If the Michael Angelo Entities fail to discontinue with prejudice any such lawsuits, arbitrations, or other proceedings that any Michael Angelo Entity has brought against [SFMAIC], the Michael Angelo Entity(s) that failed to discontinue with prejudice any proceeding agree to pay and indemnify State Farm Mutual for any fees, costs, expenses, and liabilities resulting therefrom, including but not limited to any sums incurred in defending or obtaining dismissal of the lawsuits, arbitrations, or other proceedings**.

(RE 118-2, Page ID ## 6704–6705, ¶3 (emphasis added)).

---

[4] The Michigan Attorney General later filed a criminal complaint against Angelo raising allegations similar to those SFMAIC alleged here, and a federal grand jury also indicted Angelo and various associates for related conduct. *See* MICH. ATT'Y GEN., Press Release, "Six People Charged with Criminal Enterprise Targeting Accident Victims" (Apr. 27, 2023), *available at* www.michigan.gov/ag/news/press-releases/2023/04/27/six-people-charged-with-criminal-enterprise-targeting-accident-victims; *United States v. Angelo, et al.*, No. 22-20188 (E.D. Mich.); *United States v. Angelo, et al.*, No. 20-20599 (E.D. Mich.).

[5] The Settlement Agreement specifically defines this term to include Angelo. (RE 118-2, Page ID # 6702).

The Settlement Agreement additionally provides for costs of enforcement: "**In any action to enforce the terms of this Confidential Agreement pursuant to paragraph 14, the prevailing Party shall recover its costs, including reasonable attorney's fees, from the other Party to the action**." (RE 196-1, Page ID ## 9107–9108, ¶25 (emphasis added)). Paragraph 14, in turn, provides the then-presiding judge, Hon. Robert H. Cleland, "retain[ed] jurisdiction to enforce any term of this Confidential Agreement," and, if he was not available, "any action to enforce" the Settlement Agreement should be brought in the Eastern District of Michigan. (RE 118-2, Page ID ## 6711–6712, ¶14). "If any such claim is brought, the prevailing Party shall be entitled to reasonable attorney's fees and costs." (*Id.*).

### B.      Angelo Breaches the Settlement Agreement by Failing to Take Steps to Secure the Discontinuance of a Covered Lawsuit, Setting Off Months of Enforcement Efforts

Six weeks after the Settlement Agreement was executed, the *Qui Tam* Action filed by Angelo against SFMAIC was unsealed. Despite multiple demands from SFMAIC, Angelo refused to take any action to comply with his obligations under the Settlement Agreement to take all steps necessary to seek discontinuance of the *Qui Tam* Action. (*See* RE 118-4). SFMAIC filed its Motion to Enforce Settlement Agreement and Release Against Michael Angelo ("First Motion to Enforce") on April 29, 2021 (RE 118).

On February 28, 2022, the district court granted SFMAIC's First Motion to Enforce and ordered that Angelo, "proceeding in good faith and undertaking no contrary or inconsistent acts, must forthwith solicit the government's consent to dismiss the instant *Qui Tam* Action against [SFMAIC.]" (RE 149, Page ID # 8081). Rather than comply, Angelo filed a Motion for Reconsideration (RE 150). The district court denied Angelo's motion on May 2, 2022, and again ordered that Angelo, "proceeding in good faith and undertaking no contrary or inconsistent acts, must forthwith solicit the government's consent to dismiss the instant *Qui Tam* Action against State Farm[.]" (RE 157, Page ID # 8301). Despite those directives, Angelo failed to take the appropriate actions to seek the Government's consent.

Given Angelo's ongoing noncompliance, on June 16, 2022, SFMAIC filed a Motion to Enforce May 2, 2022 Order ("Second Motion to Enforce," RE 163). The district court granted that motion on March 30, 2023, finding Angelo's first attempt at soliciting government consent in May 2022 "facially deficient" (RE 176, Page ID ## 8857, 8860) and his second attempt "not consistent with . . . good faith." (RE 176, Page ID # 8860). Consequently, the district court ordered Angelo to file a formal written "Request for Consent to Dismiss" in the *Qui Tam* Action. (RE 176, Page ID ## 8860–8861). The district court "deemed this action warranted because the informal mechanism used by Angelo thus far to ask for the government's consent

led to inconsistent results and confusion" and "left the court with concerns that Angelo was not proceeding in good faith." (RE 181, Page ID ## 8968–8969).

Rather than promptly comply, Angelo sought reconsideration of the district court's order. (RE 178). The district court denied that request, noting that Angelo's additional filings "**reveal[ed] quite clearly to the court how Angelo has not pursued the government's consent in good faith**" and **"r[an] blatantly afoul of the court's prior orders to proceed in good faith.**" (RE 181, Page ID ## 8974 n.3, 8977 (emphases added)).

### C. <u>The District Court Requires Angelo to File a Request for Consent in the *Qui Tam* Action, and the District Court Thereafter Awards SFMAIC Its Attorney Fees</u>

On April 22, 2023—over a year after the district court's initial order enforcing the Settlement Agreement and two years after the Settlement Agreement obligations took effect—Angelo finally filed a Request for Consent to Dismiss SFMAIC from the *Qui Tam* Action. (2:19-cv-12165 ECF No. 455 (E.D. Mich.)). On June 9, 2023, SFMAIC filed a motion seeking its attorney fees and costs incurred in connection with enforcing the Settlement Agreement and defending the *Qui Tam* Action ("<u>Fee Motion</u>," RE 194).

The district court granted SFMAIC's Fee Motion on September 14, 2023 ("<u>Fee Order</u>," RE 197). In its opinion, the district court reviewed the text of the Settlement Agreement—namely, Paragraphs 3 (the dismissal and fee provision), 14

(the jurisdiction and fee provision), and 25 ("Costs of Enforcement"). (RE 197, Page ID # 9115). The court also addressed each of the counterarguments Angelo raised.

First, the district court rejected Angelo's position that, given Angelo's reading of Paragraph 14, Paragraph 25 only allows for an award of costs and fees where Judge Cleland does not preside over the enforcement action, finding that Angelo's interpretation "would render paragraph twenty-five entirely superfluous, as there would be no need for a separate 'Costs of Enforcement' provision," and "ignores the word 'any'" in Paragraph 25. (RE 197, Page ID # 9117). Second, the court rejected Angelo's argument that SFMAIC did not qualify as a prevailing party because SFMAIC achieved, at most, "trivial" success. As the court explained, SFMAIC achieved what it "pursued in this litigation": "the enforcement of rights owed to it under the parties' settlement agreement." (RE 197, Page ID # 9118). Since, as a result of those enforcement proceedings, "Angelo is no longer allowed to freely pursue State Farm in the *qui tam* suit . . . , State Farm is a prevailing party for purposes of this case." (RE 197, Page ID ## 9118–9119). Notably, the district court rejected Angelo's attempt to avoid paying the *Qui Tam* Action defense fees and costs as "not meaningfully addressed" by Angelo, who never once referenced Paragraph 3 in his briefing. (RE 197, Page ID # 9120).

8

## VI.    <u>SUMMARY OF THE ARGUMENT</u>

Angelo unambiguously promised to pay SFMAIC's attorney fees and costs incurred (1) in connection with enforcing the Settlement Agreement (Paragraph 25) and (2) resulting from Angelo's failure to secure a discontinuance of any covered lawsuits (Paragraph 3). After SFMAIC had to enforce the Settlement Agreement because Angelo failed to take necessary steps to secure the discontinuance of the *Qui Tam* Action, the district court properly awarded SFMAIC its attorney fees and costs.

Angelo raises several arguments to the contrary, none of which withstands scrutiny. As an initial problem, Angelo forfeited most of his arguments by failing to raise them before the district court, and Angelo has not established the necessary grounds to warrant this Court's discretionary review.

Regardless of his failure to preserve the arguments, Angelo's strained reading of the Settlement Agreement—namely, his attempts to refashion "action" into a term of art and to read Paragraph 14 as a limitation on Paragraph 25 (and then later read those two paragraphs as a limitation on Paragraph 3, to the effect that they all cancel each other out in this case)—fails as a matter of text and logic. And Angelo cannot escape the conclusion SFMAIC qualifies as a "prevailing party" under Paragraph 25.

Even if Angelo had a viable argument under Paragraph 25 (he does not), he fails to address the fact that the district court's fee award still stands under Paragraph 3. Before the district court, Angelo never argued against an award of fees and costs resulting from SFMAIC's enforcement efforts or the *Qui Tam* Action defense under Paragraph 3. Although SFMAIC cited Paragraph 3 in its Fee Motion, Angelo's briefing below did not even reference Paragraph 3. While Angelo now argues that an award of *Qui Tam* Action defense fees and costs under Paragraph 3 would be against public policy, Angelo failed to preserve that argument, not even mentioning the phrase "public policy" in his briefing to the district court. And, even if they had not been forfeited, Angelo's arguments on Paragraph 3 are unavailing.

Beyond that, the district court determined Angelo's conduct in taking steps to seek the Government's consent ran "blatantly afoul of the court's prior orders to proceed in good faith." (RE 181, Page ID ## 8974 n.3, 8977). Thus, although the district court did not rely on its inherent authority in issuing its Fee Order, the award can be affirmed on that alternate basis.

The district court properly directed Angelo to pay SFMAIC's attorney fees and costs.

## VII.    ARGUMENT

### A.    STANDARD OF REVIEW AND RULE AGAINST CONSIDERATION OF FORFEITED ARGUMENTS

"This court reviews a district court's award of attorney fees and costs for an abuse of discretion." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007); *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 320 F. App'x 323, 325 (6th Cir. 2008). "'Where a district court has awarded attorneys' fees under a valid contractual authorization, we recognize that it has broad discretion in doing so, and an award of such fees may be set aside only for abuse of discretion.'" *PNC Bank, N.A. v. Legal Advoc., P.C.*, 841 F. App'x 755, 759 (6th Cir. 2020). A district court abuses its discretion only when it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Gonter*, 510 F.3d at 616 (internal quotation marks omitted). Issues of contract interpretation relating to the attorney fee award are reviewed de novo, and findings of fact are reviewed for clear error. *Progressive Foods, LLC v. Dunkin' Donuts, Inc.*, 491 F. App'x 709, 712 (6th Cir. 2012); *Graceland*, 320 F. App'x at 325.

Further, "[a]s a general rule in this Circuit, arguments raised for the first time on appeal are forfeited." *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019). "This Court deviates from the general waiver rule explained above only when it 'would produce a plain miscarriage of justice' or when there are exceptional circumstances that militate against finding a waiver." *Hayward v. Cleveland Clinic*

*Found.*, 759 F.3d 601, 615 (6th Cir. 2014). While this Court has not articulated a definitive test for exceptional circumstances, in *Bannister v. Knox Cty. Bd. of Educ.*, 49 F.4th 1000, 1012 (6th Cir. 2022), this Court has considered:

1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts;

2) whether the proper resolution of the new issue is clear and beyond doubt;

3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and

4) the parties' rights under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

## B. **ANGELO AGREED TO PAY SFMAIC'S FEES AND COSTS INCURRED TO ENFORCE THE SETTLEMENT AGREEMENT**

### 1. **The District Court Considered the Language of Paragraphs 14 and 25 and Correctly Found Paragraph 25 Entitles SFMAIC to Costs and Fees**

As Angelo acknowledges (Dkt. 16, pp.27–28), "a settlement agreement . . . is a contract and is to be construed and applied as such." *Gramer v. Gramer*, 523 N.W.2d 861, 862 (Mich. Ct. App. 1994).[6] "An agreement to settle a pending lawsuit is [therefore] governed by the legal rules applicable to the construction and interpretation of other contracts." *Clark v. Al-Amin*, 872 N.W.2d 730, 735 (Mich. Ct.

---

[6] (*See* RE 196-1, ¶20, Page ID # 9107 (providing that Michigan law governs Settlement Agreement)).

App. 2015) (internal quotation marks omitted). If the language of a settlement is unambiguous, it must be construed and enforced as written. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). "The freedom of parties to contract as they see fit is a bedrock principle of American contract law[.]'" *Elizabeth A. Silverman, PC v. Korn*, 984 N.W.2d 536, 540 (Mich. Ct. App. 2021). These principles extend to contractual attorney fee provisions. *Id.*; *Pransky v. Falcon Grp., Inc.*, 874 N.W.2d 367, 383 (Mich. Ct. App. 2015).

As the district court correctly concluded, on a plain-language reading of the Settlement Agreement, Angelo promised and agreed to pay SFMAIC's attorney fees and costs incurred in enforcing the Settlement Agreement. Pursuant to Paragraph 25, Angelo agreed: "In any action to enforce the terms of this Confidential Agreement pursuant to paragraph 14, the prevailing Party shall recover its costs, including reasonable attorney's fees, from the other Party to the action." (RE 118-2, ¶25, Page ID ## 6713–6714). Paragraph 14, in turn, provides in full:

> The Parties agree that the stipulation of dismissal referenced above in paragraph 3 shall provide for Judge Robert H. Cleland to retain jurisdiction to enforce any term of this Confidential Agreement, including the confidentiality provisions set forth in paragraph 13. If Judge Cleland declines jurisdiction or is not available, the Parties agree that any action to enforce any term of this Confidential Agreement shall be commenced in the United States District Court for the Eastern District of Michigan, Detroit Division (to the extent there is jurisdiction), and marked as a related case to the Litigation. If any such claim is brought, the prevailing Party shall be entitled to reasonable attorney's fees and costs.

13

(RE 118-2, Page ID ## 6711–6712). Angelo does not dispute the enforceability of these provisions.

Here, SFMAIC pursued its First and Second Motions to Enforce, along with the related litigation, to enforce Angelo's obligations under the Settlement Agreement. SFMAIC's First Motion to Enforce sought to "requir[e] Michael Angelo to immediately take all necessary steps to secure dismissal of the Qui Tam Complaint" (RE 118, Page ID # 6668)—the precise obligation Angelo undertook in Paragraph 3 of the Settlement Agreement (RE 118-2, Page ID # 6704)—and subsequent enforcement efforts directly flowed from Angelo's failure to comply with that basic obligation. To be sure, Angelo does not contest SFMAIC was enforcing the terms of the Settlement Agreement.

Instead, Angelo adopts an unsustainable construction of the Settlement Agreement, arguing SFMAIC cannot seek its fees and costs because SFMAIC sought enforcement in this case rather than initiating a separate lawsuit. (Dkt. 16, pp.28–39). To do so, Angelo imparts an overly formalistic and limited definition to the term "action" in Paragraphs 14 and 25, arguing that "action" must mean the initiation of a completely distinct lawsuit. (*See* Dkt. 116, pp.28–39).

As one problem, Angelo forfeited that argument by failing to raise it before the district court. *See Swanigan*, 938 F.3d at 786. In opposing SFMAIC's Fee Motion, Angelo's sole argument about Paragraph 14 was that SFMAIC supposedly

misled the district court by selectively quoting Paragraph 25 without a cross-reference to Paragraph 14, which, according to Angelo, restricts recovery to only proceedings before another Judge. (*See* RE 195, Page ID ## 9066–9068).[7] Before the district court, Angelo did not argue about the meaning of the terms "action," "proceeding," and "claim." (*Compare* Dkt. 16, pp.28–39, *with* RE 195, Page ID ## 9066–9068). Angelo does not acknowledge this omission in his appeal brief, let alone attempt to show this case presents "exceptional circumstances" that warrant discretionary review of that unpreserved argument. *See Bannister*, 49 F.4th at 1012 (internal quotation marks omitted).

Regardless, Angelo's new argument is wrong. The Settlement Agreement simply does not use the term "action" to refer to a separate lawsuit. Paragraph 14 first provides that "Judge Robert H. Cleland [will] retain *jurisdiction to enforce* any term of this [Settlement] Agreement," without specifying any type of required legal mechanism to seek such enforcement. (RE 118-2, Page ID ## 6711–6712 (emphasis added)). The next sentence then lays out what to do "[i]f Judge Cleland declines jurisdiction or is not available": "*any action* to enforce any term of this Confidential Agreement shall be" brought in the Eastern District of Michigan. (*Id.* (emphasis

---

[7] The Settlement Agreement was available to the district court in unredacted form, as well as publicly available with all relevant provisions unredacted (RE 118-2, 196-1; *see also* RE 125 (Angelo's sealed filing of entire unredacted Settlement Agreement)). Angelo has not pursued in this appeal the argument that SFMAIC hid Paragraph 14 from the district court.

added)). Paragraph 14 then concludes, "[i]f *any such claim* is brought, the prevailing Party shall be entitled to reasonable attorney's fees and costs." (*Id.* (emphasis added)). Paragraph 14 does not suggest the attorney fee recovery described in the third sentence is somehow limited only to separate lawsuits not before Judge Cleland, rather than any effort in a court of law to enforce the Settlement Agreement—including proceedings before Judge Cleland, which unambiguously do *not* require a separate lawsuit. *See Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 540 (Mich. Ct. App. 2015) ("[C]ontractual terms must be construed in context and read in light of the contract as a whole." (internal citation omitted)).

Further, "[i]n ascertaining the meaning of a contract, [courts] give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 28 (Mich. 2005). "Courts may consult dictionary definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Holland v. Trinity Health Care Corp.*, 791 N.W.2d 724, 727 (Mich. Ct. App. 2010). As a point of reference, Black's Law Dictionary defines "action" as "[t]he process of doing something; conduct or behavior" and "[a] civil or criminal judicial proceeding," among other things. *Action*, BLACK'S LAW DICTIONARY (11th ed. 2019). And it defines "claim"—another term used in Paragraph 14—to mean "[a] statement that something yet to be proved is true," "[t]he assertion of an existing right; any right to payment," and "[a] demand

for money, property, or a legal remedy to which one asserts a right," among other things. *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019).[8] SFMAIC's Motions to Enforce and its related enforcement efforts plainly qualify as a "process of doing something," "[a] civil . . . judicial proceeding," "assertion[s] of an existing right," and "demand[s] for money . . . or a legal remedy to which [SFMAIC] asserts a right." That is consistent with how those terms are ordinarily understood in common parlance.[9] Angelo cannot escape the fact that a plain-meaning analysis supports the district court's award of attorney fees and costs under Paragraph 25.

None of the cases cited by Angelo requires a different conclusion. Those cases instead recognize the meaning of "claim" and "action" depends on context. *Keene Corp. v. United States*, 508 U.S. 200, 210 (1993), observed that "'cause of action,' like 'claim,' can carry a variety of meanings." Similarly, *Senju Pharmaceutical Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014), discussed the "confusion" that can arise "in a patent case involving claim preclusion law" given the way in which "'claim'" is used in patent-related law and documents. The remaining cases that

---

[8] The current edition of Black's Law Dictionary thus differs from the editions cited in Angelo's brief. (*See* Dkt. 16, pp.31–37).

[9] *See, e.g.*, *Action*, MERRIAM-WEBSTER DICTIONARY (defining "action" as "a thing done"), https://www.merriam-webster.com/dictionary/action; *Claim*, MERRIAM-WEBSTER DICTIONARY (defining "claim" as "a demand for something due or believed to be due" and "a right to something"), https://www.merriam-webster.com/dictionary/claim#dictionary-entry-2.

Angelo cites apply that general principle to specific statutory contexts. *See Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961) (interpreting Fed. R. Civ. P. 41); *Letherer v. Alger Grp., L.L.C.*, 328 F.3d 262, 266 (6th Cir. 2003) (same); *Kulak v. City of Birmingham*, No. 258905, 2006 WL 954178, at *3 (Mich. Ct. App. Apr. 13, 2006) (interpreting Mich. Comp. Laws § 117.30).

Particularly here, where the Settlement Agreement contains three different provisions discussing SFMAIC's entitlement to fees and costs for efforts taken in response to Angelo's breaches, it makes little sense to adopt an overly restrictive reading that would deny SFMAIC a recovery. Under Angelo's construction, SFMAIC would be entitled to its costs and fees if SFMAIC filed a separate lawsuit to enforce the Settlement Agreement, but, because SFMAIC instead filed Motions to Enforce with the Judge who retained jurisdiction, SFMAIC must forego its right to fees. Nothing in the Settlement Agreement suggests that the Parties intended such a harsh and illogical result. While Angelo now postulates that his reading makes sense and thus *could* reflect the parties' "apparent rationale" (Dkt. 16, p.39), Angelo did not raise this argument to the district court and, even if he had, it cannot overcome the clear intent of the Parties as memorialized in the plain language of the Settlement Agreement, which was to fully compensate SFMAIC for any breaches

18

by Angelo.[10] The district court thus correctly concluded that SFMAIC was entitled to its fees under Paragraph 25.

### 2. The District Court Correctly Found SFMAIC Is a Prevailing Party For Purposes of Paragraph 25

The district court also correctly determined "State Farm is a prevailing party for purposes of this case" under Paragraphs 14 and 25 of the Settlement Agreement. (RE 197, Page ID # 9119). As Angelo agrees (Dkt. 16, p.43), a party "prevails" when it achieves "'the material alteration of the legal relationship of the parties,'" as "marked by 'judicial imprimatur.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602–03 & n.4 (2001)). As the district court noted, "[t]he relief secured must modify the offending party's behavior so as to directly benefit the relieved party." (RE 197, Page ID # 9119, citing *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). Put differently, "a party is the prevailing party where (1) it receives 'at least some relief on the merits of its claim,' and (2) there is a 'judicially sanctioned change in the legal relationship of the parties.'" *Maker's Mark Distillery,*

---

[10] Angelo points to no record evidence to support his new theory. Moreover, Angelo's invented "rationale" would not logically have resulted in the limitation Angelo now reads into the Settlement Agreement. Instead, the Settlement Agreement would have incentivized enforcement efficiencies by only awarding fees for enforcement proceedings before Judge Cleland (rather than the reverse Angelo now argues).

*Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012) (quoting *Buckhannon*, 532 U.S. at 603, 605).

Here, the district court granted SFMAIC's Motions to Enforce in full, which resulted in Angelo finally filing a Request for Consent to Dismiss his claims against SFMAIC in the *Qui Tam* Action. Particularly considering Angelo's resistance to filing a Request for Consent, SFMAIC's enforcement efforts resulted in "'the material alteration of the legal relationship of the parties,'" as "marked by 'judicial imprimatur.'" *CRST Van Expedited*, 578 U.S. at 422. Yet Angelo now attempts to argue otherwise on both points. Notably, as discussed below, Angelo never raised to the district court his new argument that judicial imprimatur is lacking.

Starting with Angelo's argument that no material alteration in the parties' legal relationship occurred, Angelo argues SFMAIC cannot be a "prevailing party" because the enforcement proceedings did not result in dismissal of the *Qui Tam* Action in full and "the purported success – Angelo filing a request – is trivial, at best." (*See* Dkt. 16, pp.47–48). The district court correctly rejected this argument, noting it rested on a flawed assumption about SFMAIC's goal in enforcing the Settlement Agreement:

> The court again disagrees [with Angelo]. First and foremost, Angelo's portrayal of State Farm's primary objective is inexact. Certainly, State Farm does not desire to be a defendant in the *qui tam* action. But more precisely, State Farm has steadily pursued in this litigation the enforcement of rights owed to it under the parties' settlement agreement. Angelo may disagree, but the court found the *qui tam* action

20

to be one of the claims he should have discontinued within seven days of the settlement agreement's enactment. Given the nature of the *qui tam* suit, discontinuing that action took the ultimate form of a request for consent to dismiss. Simply put, State Farm got what it came for.

(RE 197, Page ID # 9118).

Put another way, in its Motions to Enforce, SFMAIC sought an order compelling Angelo to comply with his obligations under the Settlement Agreement, including by seeking the Government's consent to dismissal in the *Qui Tam* Action. (*See, e.g.*, RE 118, Page ID # 6668; RE 163, Page ID ## 8333–8334; RE 166, Page ID ## 8477–8481). That is exactly the relief the district court directed. (*See* RE 149, Page ID ## 8080–8081; RE 176, Page ID ## 8861–8862). And that is exactly what Angelo—after months of obstructionism—eventually did, by filing a Request for Consent to Dismiss SFMAIC in the *Qui Tam* Action. (2:19-cv-12165 ECF No. 455 (E.D. Mich.)). That the *Qui Tam* Action court may not yet have ruled on the pending dismissal has no bearing on SFMAIC's prevailing party status under the Settlement Agreement. As the district court found, a "behavior change has occurred here," modifying Angelo's conduct to directly benefit SFMAIC: "Angelo is no longer allowed to freely pursue State Farm in the *qui tam* suit." (RE 197, Page ID # 9119, citing *Farrar*, 506 U.S. at 111–12).[11]

---

[11] This point is underscored by Angelo's continued pursuit of his appeals of the district court's enforcement orders (Cases 22-1409 and 23-1450). If the relief afforded by the district court were truly trivial, it would make little sense for Angelo

Second, Angelo argues SFMAIC is not the prevailing party because the relevant change "was not judicially sanctioned." Once again, Angelo failed to raise this argument below (*see* RE 195, Page ID ## 9068–9075),[12] and he does not now attempt to show how any of the relevant factors would give rise to "exceptional circumstances" warranting discretionary review. *See Bannister*, 49 F.4th at 1012 (internal quotation marks omitted).

Regardless, Angelo's argument—that only the separate *Qui Tam* Action court or the Government, a non-judicial body, could effectuate the relevant change (Dkt. 16, p.44)—again relies on the mischaracterized nature of the "change" SFMAIC sought in the enforcement proceedings. That "change" was Angelo's compliance with the Settlement Agreement, which was effectuated through the district court-ordered request for consent filing that effectively negated Angelo's ability to pursue SFMAIC and its affiliates in the *Qui Tam* Action. In this respect, it is undisputed, as demonstrated by multiple enforcement orders, that the district court (a judicial body)

---

to continue prosecuting those appeals. Angelo conceded as much during the February 1, 2024 oral argument in those cases, where he sought reversal of the enforcement orders to allow him to continue pursuing SFMAIC in the *Qui Tam* Action. (*See generally* Recording of Oral Argument, "22-1409 23-1340 State Farm Mutual Auto Ins Co v Michael Angelo," *available at* https://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php).

[12] While Angelo acknowledged the two-prong standard in his briefing to the district court, including by citing *Buckhannon*, he never argued that the second prong— judicial imprimatur—was missing.

22

"sanctioned" the requested change in Angelo's behavior by ordering him to seek the Government's consent to dismiss the pending *qui tam* claims against SFMAIC. (RE ## 149, 157, 176, 181).

None of the decisions Angelo cites suggests that SFMAIC is not a "prevailing party." In *Buckhannon*, for instance, the Supreme Court declined to find "prevailing party" status based on a "catalyst theory" where the defendant **voluntarily** changed its allegedly improper conduct after the plaintiff filed suit, and the plaintiff never received a judgment on the merits or court order in its favor. *Buckhannon*, 532 U.S. at 600. *See also Chambers v. Ohio Dep't of Hum. Servs.*, 273 F.3d 690, 691–93 (6th Cir. 2001) (reversing fee award where district court explicitly relied on catalyst theory overruled by *Buckhannon* even though defendant modified its allegedly improper conduct "prior to any court adjudication of the matter.")[13] But SFMAIC advances no such catalyst theory here: far from voluntarily changing his conduct like the defendants in *Buckhannon* and *Chambers*, Angelo continued to violate his obligations under the Settlement Agreement for over a year after SFMAIC filed its First Motion to Enforce. And unlike the plaintiffs in those cases, SFMAIC received multiple district court orders affirming SFMAIC's assertion of its rights under the

---

[13] Another Supreme Court case on which Angelo relies—*Farrar*—applied a special rule relating to the **amount** of the fee award in cases where the plaintiff obtained only nominal damages. *Farrar* expressly recognized the plaintiff qualified as a prevailing party. *See Farrar*, 506 U.S. at 112.

Settlement Agreement and directing Angelo's compliance. This Court should affirm the district court's finding that SFMAIC is the prevailing party.

The district court did not abuse its discretion in concluding Angelo is required to pay SFMAIC its costs and attorney fees under Paragraph 25 of the Settlement Agreement.

## C. ANGELO ALSO AGREED TO PAY SFMAIC'S FEES AND COSTS INCURRED AS A RESULT OF ANGELO'S FAILURE TO DISCONTINUE THE *QUI TAM* ACTION

### 1. SFMAIC Is Entitled to Its Enforcement Costs and Fees Pursuant to Paragraph 3

The district court also correctly held SFMAIC was entitled to its costs and fees under Paragraph 3. As the district court described, Paragraph 3 "broadly provides for an award of fees and costs in the event that Angelo fails to discontinue any qualifying lawsuit, arbitration, or other proceeding." (RE 197, Page ID # 9119). In particular, after establishing Angelo's obligation to "take all steps necessary to . . . secure the discontinuance of" lawsuits like the *Qui Tam* Action, Paragraph 3 provides that "[i]f [Angelo] fail[s] to discontinue with prejudice any such lawsuits, . . . [Angelo] . . . agree[s] to pay" SFMAIC "any fees[] [or] costs . . . resulting therefrom . . ." (RE 118-2, Page ID ## 6704–6705). Given this language, Angelo is liable for SFMAIC's costs and attorney fees in the enforcement proceedings under Paragraph 3.

Angelo never disputed this in the district court, even though SFMAIC made this same point in its Fee Motion. (RE 194, Page ID ## 9024–9025 (citing and quoting Paragraph 3 as basis for SFMAIC's entitlement to fees and costs for Motions to Enforce in addition to fees and costs in defending the *Qui Tam* Action)). Indeed, Angelo's district court brief never references Paragraph 3 (*see generally* RE 195). And Angelo fails to put forward any argument showing discretionary review is warranted. *See Bannister*, 49 F.4th at 1012.

Angelo's new argument also is wrong. Like Angelo's other "textual" arguments, this one depends on an artificially narrow reading of Paragraph 3. Nothing in Paragraph 3 conditions Angelo's duty to pay SFMAIC's enforcement fees and costs on SFMAIC "obtain[ing] dismissal" of the *Qui Tam* Action, as Angelo now claims. Instead, Paragraph 3 broadly provides that if Angelo fails to discontinue a covered lawsuit, Angelo owes SFMAIC the fees and costs "resulting therefrom." Angelo's reading improperly excludes the "including but not limited to" clause, which makes clear that "defending or obtaining dismissal of the lawsuits" are examples and not limitations on this obligation. Consequently, Angelo is liable for SFMAIC's costs and fees incurred in the enforcement proceedings under Paragraph 3 of the Settlement Agreement.

Angelo next attempts to avoid this conclusion by arguing—for the first time—the attorney fee provisions in Paragraphs 14 and 25 are more "specific" and therefore

should control over the more "general" fee provision in Paragraph 3. Beyond being forfeited, Angelo's argument is incorrect, as these provisions do not address the exact same issue. Paragraphs 14 and 25 apply to any action or claim "to enforce any term [or 'the terms'] of this [Settlement] Agreement" (RE 196-1, Page ID ## 9105–9106), while Paragraph 3 applies only to situations where a Michael Angelo Entity has "fail[ed] to discontinue with prejudice" any of the "lawsuits, arbitrations or other proceedings" described in Paragraph 3 (RE 196-1, Page ID ## 9098–9099).

Contrast that with *DeFrain v. State Farm Mutual Automobile Insurance Co.*, 817 N.W.2d 504, 509, n.22 (Mich. 2012), where a "specific provision [in an insurance policy] pertaining to hit-and-run accidents that requires notice to State Farm within 30 days [was] controlling" over "a more general provision requiring a claimant to notify State Farm of a claim for UM benefits and provide details concerning the incident 'as soon as reasonably possible,'" since the plaintiff sought benefits in connection with a hit-and-run. Unlike the clauses in *DeFrain*, which both addressed the same issue in every instance (notice to the insurer), Paragraphs 14 and 25 can address different situations than Paragraph 3 (enforcement costs versus costs incurred as a result of Angelo's breach of Paragraph 3's dismissal covenant). While there is overlap in this particular case, where both enforcement costs and costs resulting from Angelo's breach of the dismissal covenant have been incurred, that would not be necessarily be true in every case.

Moreover, assuming Angelo is correct that the general-versus-specific canon applies here, Angelo has flipped it on its head: Paragraph 3 is actually *more* specific than the general enforcement provisions in Paragraphs 14 and 25. While Paragraphs 14 and 25 apply broadly to efforts to enforce any obligation under the Settlement Agreement, Paragraph 3 applies to a narrower subset of situations where Angelo or his Entities have breached their obligation in Paragraph 3 to "take all steps necessary to . . . secure the discontinuance of" pending lawsuits against SFMAIC. That is exactly the nature of the breach that the district court found occurred here.

As such, SFMAIC is entitled to its enforcement costs and attorney fees under Paragraph 3 of the Settlement Agreement.

> **2.    The District Court Correctly Determined SFMAIC Is Entitled to Its *Qui Tam* Action Defense Costs and Fees Pursuant to Paragraph 3**

The district court properly enforced Angelo's obligation per Paragraph 3 to pay SFMAIC's *Qui Tam* Action defense fees and costs. (RE 197, Page ID ## 9119–9120). While Angelo now claims that public policy precludes the district court's decision to award SFMAIC its costs and fees incurred in defending the *Qui Tam* Action, Angelo forfeited this argument by not raising it before the district court. And Angelo cannot establish this as one of the limited circumstances in which discretionary review is appropriate, much less that his argument prevails on the merits.

a.    **Angelo Failed to Raise a Public Policy Argument to the District Court Even Though SFMAIC Requested *Qui Tam* Action Defense Costs in Its Fee Motion**

In the district court, SFMAIC repeatedly claimed entitlement not only to fees and costs incurred in enforcing the Settlement Agreement, but also to the *Qui Tam* Action defense fees pursuant to Paragraph 3, as SFMAIC's Fee Motion made clear:

- Listing "SFMAIC's costs and fees incurred to date in seeking the dismissal of *United States ex rel. Michael Angelo et al. v. State Farm Mutual Automobile Insurance Company*, No. 2:19-cv-12165 (E.D. Mich.)." (RE 194, Page ID ## 8996–8997).

- Presenting the issue of whether Court should enter an order requiring Angelo to pay fees and costs "incurred to . . . seek the dismissal of the Qui Tam Action." (*Id.*, Page ID # 9003).

- "Angelo expressly agreed to pay SFMAIC's expenses, including attorney fees, incurred in enforcing the Settlement Agreement, resulting from Angelo's breaches of his obligations under the Agreement, and in seeking to obtain the dismissal of covered actions where Angelo failed to do so." (*Id.*, Page ID # 9008).

- "SFMAIC accordingly requests this Court issue an Order awarding SFMAIC its costs and attorney fees incurred in the proceedings to enforce the

Settlement Agreement against Angelo and in seeking the dismissal of the Qui Tam Action." (*Id.*).

- "The Settlement Agreement's dismissal covenant contains a broad provision requiring Angelo to pay attorney fees and costs in the event Angelo fails to comply with his obligations to secure the dismissal of claims and actions covered by the Settlement Agreement." (*Id.*, Page ID ## 9010–9011).

- "Angelo Agreed to Pay SFMAIC's Expenses and Attorney Fees Incurred in Enforcing the Settlement Agreement and in Seeking to Obtain Dismissal of the Qui Tam Action." (*Id.*, Page ID # 9020).

- "Additionally, the Settlement Agreement clearly states: 'If the Michael Angelo Entities fail to discontinue with prejudice any such lawsuits, arbitrations, or other proceedings that any Michael Angelo Entity has brought against [SFMAIC] . . . [that Entity] agree[s] to pay . . . [SFMAIC] for any fees, costs, expenses, . . . resulting therefrom, including but not limited to any sums incurred in . . . obtaining dismissal of the lawsuits, arbitrations, or other proceedings.'" (*Id.*, Page ID # 9024).

- "Angelo continued to pursue the Qui Tam Action against SFMAIC, and SFMAIC incurred significant attorney fees and costs related to securing the dismissal of that action, an obligation that belonged to Angelo." (*Id.*, Page ID ## 9025–9026).

- "Thus, under the plain terms of the Settlement Agreement, Angelo is required to pay SFMAIC for its costs and attorney fees incurred in attempting . . . to obtain dismissal of SFMAIC from the Qui Tam Action." (*Id.*, Page ID # 9026).

- Asking the district court to enter an order "awarding SFMAIC its costs and expenses, including reasonable attorney fees, incurred in connection with enforcing the Settlement Agreement and with seeking the dismissal of the Qui Tam Action." (*Id.*, Page ID # 9028).

Accordingly, Angelo was on notice that SFMAIC sought an order from the district court that included the award of *Qui Tam* Action defense fees and costs. Yet Angelo raised **no** public policy concerns in his opposition brief. (*See generally* RE 195).

In fact, in contrast to his opening brief before this Court—where he uses the phrases "public policy" or "public policies" 24 times—Angelo's district court brief is devoid of any of those specific phrases or even the concept in general. Notably, while Angelo now dedicates over a dozen pages to his public policy argument and cites over thirty decisions, he cited only one of those decisions in the district court—*United States v. Health Possibilities, P.S.C.*, 207 F.3d 335 (6th Cir. 2000). Even with that decision, Angelo did not cite it as part of any public policy argument, but instead mentioned it only in his "Procedural Background" section, used it to discuss a

different proposition, quoted different language from it, and cited to a different page of the decision. (RE 195, Page ID # 9059).

Angelo cannot properly make his public policy argument for the first time here. "The clear rule is that appellate courts do not consider issues not presented to the district court." *Thompson v. Parker*, 867 F.3d 641, 652 (6th Cir. 2017) (internal quotation marks omitted). *See also Gen. Med., P.C. v. Azar*, 963 F.3d 516, 525 n.3 (6th Cir. 2020) ("Any argument that is 'not raised before the district court is waived on appeal to this Court.'").

> **b.    Angelo Has Not Invoked and Cannot Meet the Standard for This Court's Discretionary Review, and, Regardless, His Arguments Are Unavailing**

Only in very limited circumstances, none of which exist here, does this Court review an issue not raised to the district court. As explained above, the Court looks to several factors to guide the exercise of its discretion to review non-preserved issues: whether the issue involves a question of fact or law and is "clear and beyond doubt," whether failing to address the issue would "result in a miscarriage of justice or a denial of substantial justice," and taking account of the parties' rights to have the issues "considered by both a district judge and an appellate court." *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996). Angelo has not requested this Court exercise its discretion nor otherwise made any showing that such discretion is warranted.

First and second, Angelo has not shown—and cannot show—that his public policy argument is a question of law the resolution of which is "clear and beyond doubt." To properly analyze Angelo's public policy question, this Court would have to consider the facts of this case compared to numerous other cases, the language of the FCA, and the FCA's legislative history. That analysis strongly weighs in favor of upholding the district court's decision. However, if the Court were in doubt of that, several other issues would have to be considered, including due process concerns, the appropriateness of federal preemption in these circumstances, and the constitutionality of the FCA's *qui tam* provisions,[14] making Angelo's public policy argument inappropriate for this Court's discretionary review.

Case law supports upholding the district court's award of *Qui Tam* Action defense fees and costs per the settlement that Angelo struck with SFMAIC. Angelo relies on one Ninth Circuit decision—*Mortgages, Inc. v. U.S. District Court for District of Nevada*, 934 F.2d 209 (9th Cir. 1991)—but later Ninth Circuit decisions support the district court's award here by identifying important distinctions based on the factual circumstances of the case. *See Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1209, 1212 (9th Cir. 2009), *as amended* (2010) (allowing "independent" claims against *qui tam* relator); *U.S. ex rel. Madden v. General*

---

[14] *See U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 443 (2023) (Thomas, J., dissenting) (raising "serious constitutional questions" with FCA *qui tam* provisions).

*Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993) (reversing dismissal of claims brought by defendant against *qui tam* relator). In *Cell Therapeutics*, the Ninth Circuit highlighted the general public policy "in favor of encouraging parties to settle disputes" and a need to avoid "chill[ing] the settlement spirit," which construing settlement agreements as barring claims against relators may do. 586 F.3d at 1209, 1212 (internal quotation marks omitted).

Another case that Angelo heavily relies on also supports the district court's award. "[T]he acts that give rise to these causes of action"—namely, Angelo's failure to comply with his Settlement Agreement obligation to take all steps necessary to discontinue the *Qui Tam* Action, including, as the district court highlighted, by continuing to pursue and even amending the complaint in the *Qui Tam* Action after he signed the Settlement Agreement—"are separate from the acts on which FCA liability is predicated, so the defendant's cause of action can prevail regardless of the outcome in the FCA case." *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 27 (D.D.C. 2007). The Sixth Circuit has affirmed orders applying that "independent" or "separate" reasoning, in *U.S. ex rel. Scott v. Metropolitan Health Corp.* 234 F. App'x 341, 367–68 (6th Cir. 2007). As the district court in *Scott* explained, protection "against setoff or other claim for indemnification by the *qui tam* Defendants . . . . does not mean (and cannot mean if justice is to be done) that *qui tam* assets are protected from seizure for unrelated claims arising after

the *qui tam* events (in this case litigation abuses)." No. 1:02-CV-485, 2005 WL 3434830, at *11 (W.D. Mich. Dec. 13, 2005). Thus, *Scott* upheld an attorney fee judgment against a *qui tam* relator as a sanction for pursuing a frivolous retaliation claim.[15]

Likewise, the language and legislative history of the FCA Angelo identifies do not support discretionary review. For example, Angelo's claim that the FCA's separate provision for a defendant's recovery of fees and costs somehow has preclusive effect here has already been rejected by other courts as offending procedural due process:

> These remedies [under 31 U.S.C. § 3730(d)(3) & (d)(4)] are inadequate for two reasons, however. First, recovering damages under the FCA's attorney's fees provision is difficult because of the exacting standards that must be met. Under § 3730(d)(4) a *qui tam* defendant must establish that the plaintiff's action was clearly frivolous, clearly vexatious or brought primarily for the purpose of harassment. Second, these remedies do not provide for complete compensation. A *qui tam* defendant is not made whole because it is unable to recover for the actual harm it suffered as a result of the relator's conduct. Thus, we

---

[15] Other district courts also have recognized actionable "independent" damages. *See, e.g.*, *Chattanooga-Hamilton Cty. Hosp. Auth. v. Xerox Corp.*, No. 1:16-CV-496, 2017 WL 2637745, at *8–9 (E.D. Tenn. June 19, 2017) (allowing claims seeking damages caused by FCA action but arising from express contractual provisions— including indemnification provisions—to proceed); *U.S. ex rel. Salvatore v. Fleming*, No. 11-CV-1157, 2015 WL 1326330, at *3–4 (W.D. Pa. Feb. 24, 2015) (permitting re-pleading of cross-claim where defendant "identified an agreement potentially providing an independent basis for [defendant's] liability aside from violation of the FCA" where contract required "cover[ing] all of [counterparty's] expenses and attorney fees"), *report and recommendation adopted*, 2015 WL 1384487 (W.D. Pa. Mar. 25, 2015).

hold that *qui tam* defendants can bring counterclaims for independent damages.

*Madden*, 4 F.3d at 831; *see also U.S. ex rel. Burch v. Piqua Eng'g, Inc.*, 145 F.R.D. 452, 457 (S.D. Ohio 1992) (rejecting argument that FCA itself provides effective remedy). This is particularly true where, as here, the *qui tam* defendant's claim arises out of a contractual obligation to make the defendant whole voluntarily entered into by the relator **after** having filed the *qui tam* action and without insisting on any of the more restrictive standards imposed by the FCA's separate provision for fees and costs.

Likewise, no "protecting whistleblowers" public policy is implicated here, as SFMAIC is not "retaliating" against Angelo for serving as a relator, despite what Angelo now claims. SFMAIC sought and obtained judicial enforcement of a contract between the parties, and Angelo's status as a *qui tam* relator provides no safe harbor to escape his contractual obligations. *See, e.g.*, *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 163 (2d Cir. 2013) ("While the FCA permits any person to bring a *qui tam* suit, it does not authorize that person to violate state laws in the process." (cleaned up)); *U.S. ex rel. Doe v. X Corp.*, 862 F. Supp. 1502, 1507 (E.D. Va. 1994) ("The Act permits 'a person' to file a *qui tam* suit; it does not require him to do so. Nor does the Act immunize a relator for actions taken in pursuance of a *qui tam* action that violate state law."). As the Ninth Circuit reasoned, "relators and their attorneys are not free to engage in misconduct without consequences merely because

those consequences might chill others. Further, the awarded fees cover [the] successful contract claim, not [the] FCA claim. We are confident that future litigants will appreciate the difference." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062–63 (9th Cir. 2011).

Angelo's claim that public policy favors punishing wrongdoers does not support his arguments here, especially where the Settlement Agreement resulted from SFMAIC's assertion and vigorous litigation of serious allegations of **wrongdoing by Angelo**. So, this Court would have to consider whether federal preemption based on this implied Congressional concern is appropriate at all,[16] but particularly in these circumstances given the allegations against Angelo resulting in his obligations under the Settlement Agreement.

Enforcing Angelo's obligation under Paragraph 3 also does not implicate— much less conflict with—the FCA's aim of incentivizing whistleblowing. This concern may arise when a party bargains away his right to bring a *qui tam* claim in the first instance, thereby frustrating the objective of having a private party bring potential fraud matters to the Government's attention. But that is not the circumstance here. Rather, by the time of Angelo's voluntary contractual undertaking in February 2021, he already filed the *Qui Tam* Action in July 2019 (*see*

---

[16] Courts have become increasingly skeptical of implied-obstacle preemption because it does not rely on statutory text. *See, e.g.*, *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020); *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1905 (2019).

RE 118-3) and provided the Government with a "written disclosure of substantially all material evidence and information" he possessed regarding the *qui tam* claims, *see* 31 U.S.C. § 3730(b)(2). Thus, the Government already knew what Angelo was alleging, and Angelo was never disincentivized against bringing his allegations to the Government's attention. This sequence of events is important.[17] Angelo's post-filing Settlement Agreement obligations did not interfere with, and could not have interfered with, the FCA's incentive for relators "to file suit" in the first instance. *Madden*, 4 F.3d at 831.

Nor does Angelo raise any valid concern that permitting independent claims against *qui tam* relators conflicts with FCA provisions allowing relators to proceed with cases where the Government has not intervened (*i.e.*, Angelo's "private prosecution" argument). Despite Angelo's citation to cases setting forth the unremarkable concept that "the person bringing the action shall have the right to conduct the action" where the Government declines to intervene, 31 U.S.C. §

_____

[17] Similarly, public policy does not bar enforcement of relator releases of *qui tam* claims if the Government already knows of the allegations before releases are signed. *See U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1163 (10th Cir. 2009) ("Because the federal interests served by enforcing releases signed after disclosure to the federal government outweigh the interests served by not enforcing them, this court concludes the releases are enforceable."); *U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 359 (E.D. Mich. 2011) (weighing "the public interest in having information brought forward that the government could not otherwise obtain against the public interest in encouraging parties to settle disputes" (cleaned up)).

3730(b)(4)(B), he ignores that the FCA at the same time allows relators to seek the Government's consent to voluntarily dismiss *qui tam* claims. *Id.* § 3730(b)(1). Indeed, relators regularly decide against proceeding with their *qui tam* claims after the Government declines to intervene for reasons including an unwillingness to expend their own financial resources to pursue the action and a recognition their claims are unlikely to succeed. Here, Angelo voluntarily decided to enter into the Settlement Agreement with SFMAIC (and thereby "neutralize" his own "motivation"), obligating himself both to seek the Government's consent to dismiss the *Qui Tam* Action and to pay SFMAIC's fees and costs if it was not dismissed.[18]

For these same reasons—that the FCA itself expressly contemplates settlements and voluntary dismissals by relators, so long as government consent is obtained—Angelo's arguments that enforcing his Settlement Agreement obligations here will undercut public policies designed to deter and punish fraud likewise are unfounded. Indeed, even where evidencing a "'strong public policy of encouraging whistle-blowers to come forward[,]' . . . . Congress did contemplate, however, that [FCA] disputes would be resolved through settlement." *Lash*, 586 F.3d at 1206. As such, "the public interest in favor of encouraging parties to settle private disputes," *McNulty*, 835 F. Supp. 2d at 360, supports enforcement of Angelo's independent,

---

[18] Contrary to Angelo's assertions, nothing in the Settlement Agreement prevents Angelo from serving as a fact witness related to the *Qui Tam* Action or encourages him to "sabotage" the Government.

voluntary contractual undertaking and outweighs any of the purported policy concerns Angelo now raises.

Angelo thus has not demonstrated that there is a legal question with "a clear and beyond doubt" resolution in his favor.

Third, "affirmance of the district court's order, which concerned only attorney fees rather than the merits of the underlying dispute,[19] would not represent a 'miscarriage of justice,'" particularly where Angelo voluntarily contracted to pay such fees and has "identified no special hardship that their imposition would create."[20] *Memphis A. Philip Randolph Inst. v. Hargett*, No. 22-5207, 2023 WL 411381, at *3 (6th Cir. Jan. 26, 2023).

Fourth, "declining to excuse [the] forfeiture also would not violate [Angelo's] right to have [his] arguments considered by both a district and an appellate court," as he failed to exercise this right "without adequate explanation" by pursuing separate arguments before the district court and on appeal. *Id.* As discussed above, Angelo had the opportunity to raise his public policy argument in the district court

---

[19] This matter does not involve the district court's merits decision, which Angelo has separately appealed. (*See* Cases 22-1409 and 23-1340).

[20] Indeed, Angelo has done nothing to demonstrate any special hardship resulting from the district court's fee award and—as shown by the case history—Angelo has not lacked the means to vigorously litigate every aspect of this case.

and did not do so. In these circumstances, no "adequate explanation" exists warranting discretionary review by this Court.

## D. THE DISTRICT COURT'S ATTORNEY FEE AWARD IS ALSO APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY

Finally, this Court could affirm the district court's Fee Order on alternate grounds—that it was warranted under the court's inherent authority. SFMAIC argued in its Fee Motion that Angelo's conduct justified such a fee award, and Angelo did not meaningfully address this argument in his response (nor does he address it on appeal). (*Compare* RE 194, Page ID ## 9026–9028; RE 196, Page ID ## 9078–9088, *with* RE 195; Dkt. 16). Although the district court did not need to rely upon its inherent authority to grant SFMAIC's Fee Motion, this Court may affirm on any grounds supported by the record, even if different from those relied on by the district court. *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999).

Courts are vested with power to "'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Courts have inherent power to sanction "'acts which degrade the judicial system,'" *id.* at 32; where a litigant is "'misleading and lying to the court,'" *id.* at 42; or where a litigant engages in bad faith conduct or conduct that is "tantamount to bad faith," *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011).

Specifically, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (internal quotation marks omitted); *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 383 (6th Cir. 2022). That includes situations "where a party 'shows bad faith by delaying or disrupting the litigation.'" *Murray v. City of Columbus, Ohio*, 534 F. App'x 479, 484 (6th Cir. 2013).

In this case, Angelo disregarded the district court's directives. When the district court originally ordered Angelo to solicit the Government's consent *in good faith*, Angelo effectively disregarded that instruction, instead filing what the district court determined to be a "facially deficient" declaration that "cannot legitimately be viewed as" reflecting a clear position on consent or non-consent from the Government. (RE 176, Page ID # 8857). Angelo's next attempt was likewise deficient, as Angelo "mischaracterized the 'independent' nature of MSP in his conversations with" the Government and "misleadingly indicated that *State Farm* sought the dismissal," rather than Angelo. (*Id.*, Page ID # 8860).

Further, as the district court found, Angelo's subsequent correspondence with the Government "reveals quite clearly . . . how Angelo has not pursued the government's consent in good faith." (RE 181, Page ID # 8974 n.3). In doing so, "**Angelo [has] run[] blatantly afoul of the [C]ourt's prior orders to proceed in good faith**." (*Id.* (emphasis added)).

Angelo's lengthy campaign to avoid complying with the district court's directives warrants an award of attorney fees.

## VIII.    **CONCLUSION**

SFMAIC respectfully asks this Court to affirm the district court's attorney fee order (RE 197).

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:    /s/   *Matthew P. Allen*
        Thomas W. Cranmer (P25252)
        Matthew P. Allen (P57914)
        Caroline B. Giordano (P76658)
        840 W. Long Lake Road, Suite 150
        Troy, MI 48098
        Telephone: 248.267.3381
        cranmer@millercanfield.com
        allen@millercanfield.com
        giordano@millercanfield.com
        *Attorneys for Plaintiff-Appellee*

Dated: February 9, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this 12,003-word brief complies with the Court's type-volume limitations in Fed. R. App. P. 32(a)(7) and 6 Cir. R. 32.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: <u>/s/ *Matthew P. Allen*</u>
  Matthew P. Allen (P57914)

Dated: February 9, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2024, I electronically filed the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.


By: <u>/s/ *Matthew P. Allen*</u>
Matthew P. Allen (P57914)

**ADDENDUM**

**Designation of Relevant District Court Documents**

| Record Entry | Description of Entry | Page ID ## |
|---|---|---|
| 1 | Complaint | 1–64 |
| 114 | Stipulation and Order of Dismissal with Prejudice as to Defendants Michael Angelo, Tox Testing, Inc. and US Health Pharmaceuticals, LLC d/b/a Meds Direct Only | 6173–6176 |
| 118 | SFMAIC'S Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 6662–6699 |
| 118-2 | Settlement Agreement (redacted) | 6702–6716 |
| 118-3 | Qui Tam Complaint (Case No. 2:19-cv-12165, ECF No. 1) | 6718–7002 |
| 118-4 | Email Correspondence Between Counsel for SFMAIC and Angelo | 7004–7012 |
| 125 | Angelo's Motion for Leave to File the Confidential Agreement Under Seal | |
| 126 | Angelo's Response to SFMAIC's Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 7124–7157 |
| 130 | SFMAIC'S Reply in Support of Its Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 7330–7338 |
| 143 | SFMAIC's Motion for Leave to File Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 7440–7479 |
| 144 | Order Granting SFMAIC's Motion for Leave to File Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 7737–7738 |

| Record Entry | Description of Entry | Page ID ## |
|---|---|---|
| 145 | SFMAIC's Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 7739–7757 |
| 146 | Angelo's Response to SFMAIC's Motion for Leave to File Supplemental Brief in Support of Motion to Enforce Settlement Agreement Against Angelo and Compel Dismissal of Related Case | 8008–8037 |
| 148 | SFMAIC's Reply in Support of Its Motion for Leave to File Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo and Compel Dismissal of Related Case | 8050–8058 |
| 149 | Opinion and Order Granting Plaintiff's Motion to Enforce Settlement Agreement | 8064–8081 |
| 150 | Angelo's Motion for Reconsideration, or in the Alternative, Motion to Amend the Order | 8082–8114 |
| 151 | Angelo's Motion to Stay Injunctive Relief Pending Ruling on Motion for Reconsideration of this Court's February 28, 2022 Opinion and Order | 8199–8205 |
| 153 | Plaintiff's Response to Angelo's Motion for Reconsideration, or in the Alternative, Motion to Amend the Order | |
| 154 | Plaintiff's Response to Angelo's Motion to Stay February 28, 2022 Order Pending Ruling on Motion for Reconsideration | 8239–8255 |
| 155 | Angelo's Reply in Support of His Motion to Amend the Order | 8256–8266 |
| 156 | Angelo's Reply in Support of His Motion to Stay Injunctive Relief Pending Ruling on Motion for Reconsideration of this Court's February 28, 2022 Opinion and Order | 8267–8277 |

| Record Entry | Description of Entry | Page ID ## |
|---|---|---|
| 157 | Opinion and Order Denying Angelo's Motion for Reconsideration and Terminating as Moot Motion for Stay | 8290–8301 |
| 158 | Angelo's Notice of Appeal of RE 147, 157 | 8302 |
| 160 | Angelo's Emergency Motion to Stay Injunction Pending Appeal of this Court's February 28, 2022 and May 2, 2022 Opinions and Orders | 8304–8318 |
| 161 | Opinion and Order Denying Angelo's Motion to Stay Pending Appeal | 8319–8325 |
| 162 | Declaration of Shereef H. Akeel, Esq. | 8326–8328 |
| 163 | SFMAIC's Motion to Enforce May 2, 2022 Order | 8329–8355 |
| 165 | Angelo's Response to SFMAIC's Motion to Enforce May 2, 2022 Order | 8361–8391 |
| 166 | SFMAIC's Reply Brief in Support of Motion to Enforce May 2, 2022 Order | 8474–8483 |
| 168 | SFMAIC's Response in Opposition to Angelo's Motion to Strike or Disregard New Declaration | 8577–8594 |
| 171 | Second Declaration of Shereef H. Akeel, Esq. | 8604–8607 |
| 172 | SFMAIC's Motion for Leave to File Supplemental Brief in Support of Motion to Enforce May 2, 2022 Order or, in the Alternative, to Strike the Declaration of Shereef Akeel, Esq. | 8609–8621 |
| 174 | Transcript of Motion Hearing held on 3/21/2023 | 8663–8723 |
| 176 | Opinion and Order Granting SFMAIC's Motion to Enforce May 2, 2022 Order | 8851–8862 |
| 177 | Angelo's Emergency Motion to Stay Injunction Pending Appeal and/or Reconsideration of this Court's February 28, 2022, May 2, 2022, and March 30, 2023 Opinions and Orders | 8863–8883 |
| 178 | Angelo's Motion for Reconsideration, or in the Alternative, Motion to Amend the Order | 8884–8912 |

| Record Entry | Description of Entry | Page ID ## |
|---|---|---|
| 179 | Order Granting in Part Angelo's Motion to Stay and for Expedited Response to Angelo's Motion for Reconsideration | 8929–8930 |
| 180 | SFMAIC's Response to Angelo's Motion for Reconsideration, or in the Alternative, Motion to Amend the Order | 8931–8962 |
| 181 | Opinion and Order Denying Angelo's Motion for Reconsideration or in the alternative Motion to Amend the Order and Lifting Stay | 8968–8977 |
| 186 | Notice of Appeal of RE 176, 181 | 8984 |
| 194 | SFMAIC's Motion for Award of Attorney Fees and Costs | 8994–9030 |
| 195 | Angelo's Motion to Deny Plaintiff's Motion for Award of Attorney Fees and Costs | 9048–9080 |
| 196 | SFMAIC's Reply in Support of Motion for Award of Attorney Fees and Costs | 9086–9094 |
| 196-1 | Confidential Settlement Agreement and Release (redacted) | 9096–9110 |
| 197 | Opinion and Order Granting SFMAIC's Motion for Attorney Fees and Costs | 9111–9122 |
| 201 | Notice of Appeal of RE 197 | 9897–9899 |

41556955.10/150450.00154