**No. 23-1918**
_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**
_____

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff-Appellee**


**v.**


**MICHAEL ANGELO, Defendant-Appellant**


**ORTHOPEDIC, P.C., et al., Defendants**
_____


On Appeal from the United States District Court
For Eastern District of Michigan, Southern Division
19-10669
_____


**REPLY BRIEF OF APPELLANT**
_____

SHEREEF H. AKEEL (P54345)
ADAM S. AKEEL (P81328)
SAMUEL R. SIMKINS (P81210)
EMAD R. HAMADEH (P86849)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
shereef@akeelvalentine.com
adam@akeelvalentine.com

sam@akeelvalentine.com
emad@akeelvalentine.com
*Counsel for Defendant-Appellant*

**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………iv

ARGUMENT ........................................................................................................1

I.   STATE FARM MISCONSTRUES THE GENERAL FORFEITURE
     RULE .........................................................................................................1

II.  THE DISTRICT COURT ERRED BY FINDING THAT THE
     ENFORCEMENT PROCEEDINGS QUALIFY FOR COSTS/FEES
     UNDER THE TERMS OF THE SETTLEMENT AGREEMENT.................3

     A.  Paragraphs 14 and 25 Are More Specific & Control Costs of
         Enforcement..........................................................................................7

III. THE DISTRICT COURT ERRED IN DESIGNATING STATE FARM AS
     A PREVAILING PARTY ...........................................................................9

IV.  THE DISTRICT COURT'S ORDER THAT ANGELO MUST
     INDEMNIFY STATE FARM FOR ALL COSTS, FEES, & LIABILITIES
     INCURRED IN THE *QUI TAM* ACTION CONTRADICTS PUBLIC
     POLICY ...................................................................................................12

     A.  Angelo Did Not Waive the Public Policy Arguments.................................12

     B.  Enforcement of The Settlement Here Does Violate Public Policy .............15

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Autum Wind Lending, LLC v. Est. of Siegel by & through Cecelia Fin. Mgmt., LLC*,
  92 F.4th 630 (6th Cir. 2024) ......................................................................... 1, 8, 12

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum.*,
  532 U.S. 598 (2001) .............................................................................................. 10

*Cell Therapeutics, Inc. v. Lash Grp., Inc.*,
  586 F.3d 1204 (9th Cir. 2009).............................................................................. 16

*Chattanooga-Hamilton Cty. Hosp. Auth. v. Xerox Corp.*,
  2017 WL 2637745 (E.D. Tenn. June 19, 2017)................................................... 17

*Chelf v. Prudential Ins. Co. of Am.*,
  31 F.4th 459 (6th Cir. 2022) .............................................................................. 1, 12

*CRST Van Expedited, Inc., v. E.E.O.C.*,
  578 U.S. 419 (2016) ................................................................................................ 9

*DeLeon v. City of Ecorse*,
  2007 WL 2259331 (E.D. Mich. Aug. 3, 2007) .................................................... 11

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ......................................................................................... 10, 12

*Friendly Farms v. Reliance Ins. Co.*,
  79 F.3d 541 (6th Cir. 1996).................................................................................... 2

*Hewitt v. Helms*,
  482 U.S. 755 (1987) ......................................................................................... 10, 12

*Johnson v. Ford Motor Co.*,
  13 F.4th 493 (6th Cir. 2021) ................................................................................... 2

*Leonor v. Provident Life & Acc. Co.*,
  790 F.3d 682 (6th Cir. 2015).................................................................................. 1

*McQueary v. Conway*,
  614 F.3d 591 (6th Cir. 2010).................................................................................. 12

*Mortgs., Inc. v. U.S. Dist. Ct. for Dist. of Nev.*,
  934 F.2d 209 (9th Cir. 1991)................................................................................. 18

*Pepper v. United States*,
  562 U.S. 476 (2011) ............................................................................................... 15

*Samons v. Nat'l Mines Corp.*,
  25 F.4th 455 (6th Cir. 2022) ................................................................................. 15

*Sole v. Wyner*,
  551 U.S. 74 (2007) ................................................................................................. 12

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
489 U.S. 782 (1983) ........................................................................ 9

*Tompkins v. Troy Sch. Dist.*,
199 F. App'x 463 (6th Cir. 2006) .................................................. 11

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ....................................................... 18

*U.S. ex rel. Doe v. X Corp.*,
862 F. Supp. 1502 (E.D. Va. 1994) ............................................... 17

*U.S. ex rel. El-Amin v. George Washington Univ.*,
2007 WL 1302597 (D.D.C. May 2, 2007) ................................ 14, 15

*U.S. ex rel. Holloway v. Heartland Hospice, Inc.*,
960 F.3d 836 (6th Cir. 2020) ......................................................... 19

*U.S. ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016) ............................................................ 14

*U.S. ex rel. Madden v. Gen. Dynamics Corp.*,
4 F.3d 827 (9th Cir. 1993) ............................................................. 16

*U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
961 F.2d 46 (4th Cir. 1992) ........................................................... 13

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
505 F. Supp. 2d 20 (D.D.C. 2007) ............................................ 16, 17

*U.S. ex rel. Salvatore v. Fleming*,
2015 WL 1326330 (W.D. Pa. Feb. 24, 2015) ................................ 17

*U.S. ex rel. Scott v. Metro. Health Corp.*,
2005 WL 3434830 (W.D. Mich. Dec. 13, 2005) ........................... 17

*U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
41 F.3d 1032 (6th Cir. 1994) ......................................................... 13

*United States v. Health Possibilities, P.S.C.*,
207 F.3d 335 (6th Cir. 2000) ......................................................... 19

*United States v. Northrop Corp.*,
59 F.3d 953 (9th Cir. 1995) ........................................................... 14

*Yee v. City of Escondido*,
503 U.S. 529 (1992) ......................................................................... 1

*Yeschick v. Mineta*,
675 F.3d 622 (6th Cir. 2012) ......................................................... 15

## Rules

Fed. R. App. P. 32(a)(5) ...................................................................... 21
Fed. R. App. P. 32(a)(6) ...................................................................... 21
Fed. R. App. P. 32(f) ........................................................................... 21

Fed. R. App. P. 32(g)(1)..................................................................................... 21

## ARGUMENT

## I.  STATE FARM MISCONSTRUES THE GENERAL FORFEITURE RULE

State Farm contends that Angelo forfeited several arguments presented before this Court. Not so. State Farm fails to appreciate the long "recognized distinction between failing to properly raise a claim [or issue] before the district court and failing to make an argument in support of that claim." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022) (quoting *Leonor v. Provident Life & Acc. Co.*, 790 F.3d 682, 687 (6th Cir. 2015)). The arguments presented by Angelo are "merely argument[s] in support of" his "basic position", and, thus, ripe for deliberation. *Autum Wind Lending, LLC v. Est. of Siegel by & through Cecelia Fin. Mgmt., LLC*, 92 F.4th 630, 636 (6th Cir. 2024). Indeed, only weeks ago, this Court reiterated that "as long as a claim or issue was raised before the district court, a party may 'formulate any argument it likes in support of that claim here.'" *Autum Wind*, 92 F.4th at 636 (quoting *Chelf*, 31 F.4th at 468).

Angelo did not raise any new *claims* or *issues* on appeal. That statement is uncontested. To the extent Angelo raised any new *arguments*, as State Farm suggests, that point is immaterial. Those arguments "are not separate claims [or issues]. They are, rather, separate arguments in support of" Angelo's longstanding position on various issues raised before the district court. *Yee v. City of Escondido*,

503 U.S. 529, 534–35 (1992). Reflecting this Court's precedent, Angelo did not forfeit any arguments, claims, or issues presented on appeal.

To the extent that this Court views any of the issues raised by Angelo on appeal forfeited, this Court has "on occasion, deviated from the general rule." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 504 (6th Cir. 2021). In particular, this Court has recognized several factors to deviate from the general rule: "(1) 'whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts;' (2) 'whether the proper resolution of the new issue is clear and beyond doubt;' (3) 'whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice;' and (4) 'the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.'" *Id.* (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)). Here, all of the issues raised by Angelo are questions of law and do not need any additional determinations of facts. Moreover, the proper resolution of these issues is clear and beyond doubt. Plus, considering the District Court already ruled on Angelo's arguments as to the interpretation of the Settlement Agreement and Angelo's public policy arguments, as discussed below, these issues should be considered by this Court as well. And this Court's failure to take up the issues would result in a miscarriage of justice, given the major public policy implications of the District Court's order on the False Claims

Act. Thus, this Court should consider all the issues raised by Angelo, regardless of whether any of them are forfeited.

## II. THE DISTRICT COURT ERRED BY FINDING THAT THE ENFORCEMENT PROCEEDINGS QUALIFY FOR COSTS/FEES UNDER THE TERMS OF THE SETTLEMENT AGREEMENT

Preliminarily, Angelo did not forfeit any contractual interpretation arguments presented before this Court. To the contrary, Angelo's position remains consistent—per the terms of Paragraph 14 and 25, State Farm is not entitled to costs and fees. The issue and supporting arguments were properly raised before the District Court. In fact, Angelo emphasized the same operative terms and phrases, and, contrary to State Farm's assertion, offered the same definition of "action". [*Compare* Dkt. 16 at 28–35, *with* R. 195, Page ID # 9065–68, 9072–73]. State Farm cannot evade this Court's review with hollow sentiments of forfeiture. State Farm's remaining arguments fare no better. The fact of the matter is, this Court would be hard-pressed to find a modicum of diligent contractual interpretation—in a breach of contract case, no less—in the District Court's order, let alone one evidencing the Parties' intent or meaning of the operative terms in the Settlement.[1] Moreover, State Farm's argument does little to revitalize the District Court's blatant error.

What State Farm dismisses as "overly formalistic" and "limited", is, in fact, an assiduous examination of the principles of contract interpretation under Michigan

---

[1] An unredacted copy of the Settlement Agreement is available at R. 125-1.

law—one that is conspicuously missing from the District Court's order. [Dkt. 19 at 26]. To that end, Angelo consulted dictionary definitions, statutory interpretations, various judicial authorities, the Michigan Court Rules, and the Parties' use of the operative terms or phrases to deduce their meaning, as used in the Settlement. [*Id*. at 31–33].

To begin with, it is abundantly clear that the Parties intended "action", as used in Paragraphs 14 and 25, to mean a "civil lawsuit" or "civil case". [*Id*. at 30–31]. That definition is consistent with the Parties' use and in no way contravenes any grammatical rule or principle. [*Id*.]. Contrariwise, baldly applying the plain meaning of "action", as State Farm suggests, creates ambiguity where none exists. Of course, as State Farm admits, "the meaning of 'action' depend[s] on context." [Dkt. 19 at 209]. Consider Paragraph 25:

> In any <u>action</u> to enforce the terms of this Confidential Agreement **pursuant to paragraph 14**, the prevailing Party shall recover its costs, including reasonable attorney fees, from **the other Party** to the <u>action</u>.

[R. 125-1 ¶ 25]. First, substitute "action" with "civil lawsuit", "civil case", or "lawsuit" and Paragraph 25 reads no differently. However, the same cannot be said when substituting "action" with "[t]he process of doing something; conduct or behavior." [Dkt. 19 at 28]. Evidently, only one definition fits, and it is certainly not the one adopted by State Farm and the District Court.

Next, as instructed, Paragraph 25 must be read in conjunction with Paragraph 14—in fact, Paragraph 25 is explicitly limited to "actions . . . pursuant to Paragraph 14." In both Paragraphs, "action" appears in the operative phrase "in any _action_ to enforce". [R. 125-1 ¶¶ 14, 25]. To avoid unnecessary confusion, the same meaning or usage must be imputed to identical terms and phrases. The question then, is which definition of "action" comports with Paragraph 14, which states, in part:

> If Judge Cleland declines jurisdiction or is not available, the Parties agree that any _action_ to enforce any term of this Confidential Agreement shall be **commenced in** the United States District Court for the Eastern District of Michigan, Detroit Division . . . and marked as a **related case** to the Litigation.

[_Id_. ¶ 14]. Of note, context is particularly instructive. Indeed, an "action . . . commenced in . . . Court . . . and marked as a related case to the Litigation" leaves little to the imagination.[2] Still, if only for arguments sake, impute the plain meaning of "action"—the process of doing something; conduct or behavior shall be commenced in court and marked as a related case. That makes no sense. The District Court failed to consider the absurd outcome when holding the term "action" to carry its plain meaning. If this Court harbors any doubt, applying the analysis above to the remaining operative terms would certainly alleviate those concerns. [Dkt. 16 at 31–37].

---

[2] Moreover, "the Litigation" is a defined reference to the captioned case before the district court. [_Id_. ¶ 3].

State Farm forgets that words matter. Especially when, as here, the dispute is governed by contract. Yet, to avoid the express limitations above, State Farm cunningly introduced the phrase "enforcement proceedings" as an interpretive tool or catchall for any legal term, phrase, conduct, or act, notwithstanding that "enforcement proceedings" appears nowhere in the Settlement. [*See, e.g.*, Dkt. 16 at 36–37; R. 125-1]. Thus, whatever meaning ascribed by State Farm and the District Court, its absence from the Settlement renders that phrase inapposite. If the Parties intended to include a catchall, they would have done so.

After discarding the untenable contentions offered by State Farm, only sophistry remains. Moreover, the District Court's reasoning is bereft of any meaningful interpretative analysis for this Court's consideration. Accordingly, Angelo's well-supported position is largely unopposed. To conclude this issue, the Court need only ask whether the operative terms and phrases comport with Angelo's reading of the Settlement. As detailed in Angelo's principal brief, the answer is yes. [Dkt. 16 at 34–39].

In sum, the Settlement's procedural mechanisms limit the Parties' substantive rights to recover attorney's fees and costs to a separate action commenced for the purpose of enforcing the term(s) of the Settlement. To be clear, Angelo is *not* asserting that State Farm should have sought enforcement by initiating a separate lawsuit. In fact, doing so would have been improper because Judge Cleland retained

jurisdiction and never refused to exercise that jurisdiction. Rather, per the plain terms of the Settlement, the Parties agreed that such cost-shifting is only triggered if a party is forced to initiate a separate lawsuit because Judge Cleland is unavailable or declines jurisdiction. Under those circumstances—*i.e.*, when a party must file a separate action to seek enforcement—the party seeking enforcement will logically incur additional costs and fees as compared to merely filing a motion in this case. Having to bring a new jurist up to speed on the full history of a complicated case requires more heavy lifting than proceeding in the same matter.[3]

### A.    Paragraphs 14 and 25 Are More Specific & Control Costs of Enforcement

State Farm is right about one thing: "these provisions do not address the exact same issue." [Dkt. 19 at 38]. Paragraphs 14 and 25 are the more specific provisions of the Settlement because they are the only provisions that mention costs for enforcement. Firstly, Angelo has not forfeited this argument. As explained above, an argument is properly preserved if the party's "basic position" was presented below, allowing it to "formulate any argument it likes in support of that [position]." *Autum Wind*, 92 F.4th at 636 (6th Cir. 2024). Angelo undoubtedly argued below that

---

[3] State Farm rejects this obvious rationale because it misapprehends Angelo's position. Again, Angelo has not argued that State Farm simply should have filed another case, thereby entitling it to costs and fees. It could not have done so. Because Judge Cleland retained jurisdiction, all enforcement efforts were rightfully brought before District Court. The convenience of continuing on in the same underlying case negates the need to trigger the cost-shifting procedure in the Settlement.

Paragraphs 14 and 25 control costs for a motion to enforce. Its argument regarding a conflict between specific and general provisions is "merely [an] argument in support of his basic position." *Id.*

On the merits, State Farm misses the mark. Paragraph 3 does not at all mention recovery of costs and fees incurred in seeking enforcement of the Settlement. State Farm posits that the language in Paragraph 3 can be read to include costs of enforcement in this case: "any fees, costs, expenses, and liabilities resulting [from Angelo's failure to secure dismissal with prejudice of all related cases], including but not limited to any sums incurred in defending or obtaining dismissal of the lawsuits, arbitrations, or other proceedings." [R. 125-1 ¶ 3]. However, even if this *could* be read as including the costs of enforcement, it is undisputed that only Paragraphs 14 and 25 explicitly mention costs of enforcement. State Farm tries to contort the specific-general analysis by saying that Paragraphs 14 and 25 apply generally to the whole Settlement while Paragraph 3 applies only to "Paragraph 3's dismissal covenant." That is the wrong metric altogether. Per State Farm's position, Paragraph 3 extends generally to <u>all</u> costs—fees, liabilities, etc.—flowing from other cases it says should have been dismissed. By contrast, Paragraphs 14 and 25 apply specifically only to the costs of enforcement and require prevailing party status and that the fees be reasonable. Paragraph 14 even specifically references Paragraph 3, but includes no limiting language such as "except as provided in", "subject to", etc.

To be sure, Angelo agrees that Paragraph 3's general indemnity provision applies to State Farm's request for costs and liabilities incurred in the *Qui Tam* Action itself. However, the specific provisions of Paragraph 14 and 25 control costs of enforcement.

## III.    THE DISTRICT COURT ERRED IN DESIGNATING STATE FARM AS A PREVAILING PARTY

The erroneous rationale espoused by State Farm and the District Court fall short of demonstrating State Farm to be a prevailing party. Of note, though the District Court granted State Farm's motion, its reasoning, though similar in some respects, differs materially from State Farm's argument.[4] Even so, neither rendition is persuasive, as demonstrated below.

This determination relies on a three-factor test. First, there "must be [a] material alteration [or change] of the legal relationship of the parties." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist*., 489 U.S. 782, 792–93 (1983). Second, "[t]his change must be marked by judicial imprimatur." *CRST Van Expedited, Inc., v. E.E.O.C*., 578 U.S. 419, 422 (2016) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001)). Third, the relief secured "must directly benefit [State Farm] at the time of the judgement." *Farrar v.*

---

[4] State Farm never equated the direct benefit and judicially sanctioned change under the prevailing party analysis with the District Court order and Angelo's inability to pursue State Farm in the *Qui Tam* Action. However, State Farm now vehemently adopts this rationale, despite its futility.

*Hobby*, 506 U.S. 103, 111 (1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 764 (1987)).

Beginning with the District Court's reasoning, the court held, in relevant part:

State Farm has steadily pursued the enforcement rights owed to it under the settlement agreement . . . . Given the nature of the qui tam suit, discontinuing that action took the ultimate form of a request for consent to dismiss. Simply put, State Farm got what it came for. The question becomes, now, whether this success supports a prevailing party designation.

[T]he relief secured must modify the offending party's behavior so as to directly benefit the relieved party. Such a behavior change has occurred here. Angelo is no longer allowed to freely pursue State Farm in the qui tam suit. The fact that a co-relator may continue to pursue State Farm does not somehow render State Farm's success in this action legally inconsequential. As such, State Farm is a prevailing party for purposes of this case.

[R. 197, Page ID #9118–19]. Accordingly, the District Court reasoned, and State Farm agrees, the supposed "change" and "direct benefit", is that "Angelo is no longer allowed to freely pursue State Farm in the qui tam suit." [Dkt. 19 at 33]. That is, the "change was Angelo's compliance with the Settlement, which was effectuated through the district court-ordered request for consent filing that effectively negated Angelo's ability to pursue SFMAIC in the *Qui Tam* Action." [*Id*. at 34]. However, this rationale is facially deficient.

Consider the three factors. Is the alleged **change**—Angelo's compliance through filing a request drafted by State Farm—and ***direct* benefit**—Angelo's inability to freely pursue State Farm in the *Qui Tam* Action—a result of **judicial imprimatur**—the District Court order? No. The District Court did not, nor could

10

have effectively negated Angelo's ability to pursue State Farm in the *Qui Tam* Action. Thus, the benefit, if any, is not judicially sanctioned. Rather, it is attributable to the voluntary decisions of non-judicial government entities. [Dkt. 16 at 44–46]. Despite conceding this point (twice), the District Court nevertheless contradicted itself and relevant precedent by awarding prevailing party status.[5]

Setting aside the District Court's flawed reasoning, what remains is little more than tiresome reiterations that State Farm secured some injunctive or declaratory relief. Even assuming State Farm was successful, "success alone, however, is not enough." *Tompkins v. Troy Sch. Dist.*, 199 F. App'x 463, 466 (6th Cir. 2006). Nor is the "mere existence of a court order . . . sufficient to establish [State Farm] as a prevailing party." *DeLeon v. City of Ecorse*, 2007 WL 2259331, at *4 (E.D. Mich. Aug. 3, 2007). Yet, other than saying they got what they came for, State Farm has not, nor can they explain why the purported success is sufficient.

Again, consider the three factors. How did the **change *directly* benefit** State Farm? In short, it did not. For one, the *Qui Tam* court has yet to address the propriety of Angelo's filing. That court could, and should, strike the request from its docket. Practically speaking, the alleged "change" is far from "enduring' and irrevocable."

---

[5] [*See, e.g.*, R. 149, Page ID # 8078–79 ("if the government decides not to consent to dismissal . . . . The court lacks authority under the FCA to mandate anything further."); *id.*, Page ID # 8080 ("[T]he government still has the final word on whether [Angelo] must continue to prosecute the action on the government's behalf.")].

*McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010) (quoting *Sole v. Wyner*, 551 U.S. 74, 86 (2007)). Next, consistent with the government's prerogative, State Farm remains a defendant in the *Qui Tam* Action. Angelo's supposed inability to pursue State Farm in the *Qui Tam* Action is not a result of judicial imprimatur. Lastly, State Farm is litigating three appeals as a result of this dispute and has yet to overcome Angelo's objections to its unreasonable Bill of Costs currently before the district court. State Farm's feigned success "is not the stuff of which legal victories are made." *Hewitt v. Helms*, 482 U.S. 755, 760 (1986). State Farm's paper victory is akin to "moral satisfaction that results from [a] favorable statement of law". *Farrar v. Hobby*, 506 U.S. 103, 573–74 (1992). However, that alone "cannot bestow prevailing party status." *Id.*

As a final point of contention, State Farm offers yet another meritless forfeiture argument. Angelo properly raised and preserved the pertinent issue— whether State Farm is the prevailing party. [R. 195, Page ID # 9068–72]. Thus, Angelo is free to "'formulate any argument [he] likes in support.'" *Autum Wind*, 92 F.4th at 636 (quoting *Chelf*, 31 F.4th at 468).

## IV. THE DISTRICT COURT'S ORDER THAT ANGELO MUST INDEMNIFY STATE FARM FOR ALL COSTS, FEES, & LIABILITIES INCURRED IN THE *QUI TAM* ACTION CONTRADICTS PUBLIC POLICY

### A. <u>Angelo Did Not Waive the Public Policy Arguments</u>

State Farm argues that Angelo forfeited his public policy arguments because he did not repeat them, for a fourth time, in opposition to State Farm's Motion for Costs. This argument fails. Before State Farm's Motion for Costs, Angelo had argued to the District Court **three times** that enforcing the Settlement as to the *Qui Tam* Action would contradict the important public policies underpinning the FCA and that this harm outweighs the interests in enforcement. [R. 126, 150, 174]. This is an issue that Angelo has raised from the very beginning of State Farm's enforcement efforts. Almost three years ago now, in opposition to State Farm's first Motion to Enforce, [R. 118], Angelo's principal argument was that enforcing the Settlement in this instance would violate clear public policy. [R. 126].

As Angelo explained then, the relevant public policy is not merely for whistleblowers to uncover and report evidence of fraud. Courts have consistently recognized that the *qui tam* provision is designed to "encourag[e] 'whistleblowers' to act as 'private attorneys-general,' too, in pursuit of an important public policy." *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041–42 (6th Cir. 1994); *see also U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 49 (4th Cir. 1992) ("Congress has let loose a posse of *ad hoc* deputies to uncover **and prosecute frauds** against the government. [Defendants] may prefer the dignity of being chased only by the regular troops; if so, they must seek relief from Congress."); *United States v. Northrop Corp.*, 59 F.3d 953, 967 (9th Cir. 1995)

("Congress's overall intent, therefore, was to encourage more **private enforcement** suits" under the FCA.); *U.S. ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 23 (2d Cir. 2016) ("The goal of the FCA's *qui tam* provisions is to prevent and rectify frauds by government contractors, by incentivizing private individuals to uncover *and prosecute* FCA claims."); *U.S. ex rel. El-Amin v. George Washington Univ.*, 2007 WL 1302597 (D.D.C. May 2, 2007) ("This financial incentive encourages the relator to inform the government of the alleged fraud. But more than that, it encourages the relator to actively participate in the case").

After the District Court rejected this position, Angelo sought reconsideration, urging the Court to acknowledge that the "important public policy" of the FCA is to financially incentivize relators to privately prosecute fraud committed against the United States. [R. 150]. Yet again, at oral argument on State Farm's Second Motion to Enforce, Angelo urged the District Court to consider the public policies that would be harmed if enforcement were granted. [R. 174]. From the very beginning, Angelo has argued that enforcing the settlement will "nullify the financial incentives created by Congress to encourage participation. . . . Effective fraud investigation would, as a result, be acutely compromised." *El-Amin*, 2007 WL 1302597, at *5.

The District Court rejected this argument at every turn, repeatedly holding that enforcing the Settlement would "not conflict with the underlying public policies of the FCA." [R 149, Page ID # 8079-80]. In other words, this undoubtedly became

the "law of the case," a doctrine which "precludes reconsideration of issues decided at an earlier stage of the case." *Yeschick v. Mineta*, 675 F.3d 622, 633 (6th Cir. 2012); *see also Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 463 (6th Cir. 2022) ("Law of the case thus promotes judicial efficiency by prohibiting parties from indefinitely relitigating the same issue that a court resolved in an earlier part of the case."). There has been no intervening change in law that would have allowed Angelo to re-raise this issue, for a fourth time, to the District Court. *See Pepper v. United States*, 562 U.S. 476, 506–07 (2011).

State Farm has no occasion to claim surprise and the record belies its protest that the issue must first be taken up by the District Court. There has been no forfeiture, and the issue has now been properly presented for this Court to decide.

### B.    <u>Enforcement of The Settlement Here Does Violate Public Policy</u>

State Farm's merits arguments on the public policy issue also fail because it gravely misunderstands the case law allowing *independent* and separate claims for indemnification. As an initial matter, *Cell Therapeutics, Inc. v. Lash Grp., Inc.* is categorically inapplicable because it involved claims against a third-party, not a relator, thus "[t]he reasons for restricting the ability of a qui tam defendant to seek recovery against a relator are not in play here." 586 F.3d 1204, 1213 (9th Cir. 2009). Further, the Ninth Circuit found that Cell Therapeutics, Inc. ("CTI") brought both dependent claims—impermissibly seeking indemnification for its FCA liability—as

well as independent claims—seeking damages from "Lash's unlawful actions and erroneous advice, which lead CTI to miss opportunities to alter its sales and marketing plans, seek FDA approval for Trisonex, or divest itself of Trisonex." *Id.* at 1209–10.[6]

Contrary to State Farm's contention, *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20 (D.D.C. 2007) does not support its position. State Farm merely quotes the rule but ignores the holding of that case. The *Miller* court dismissed defendant's claims because it "would create the perverse result of making a truthful relator pay to offset the liability of a wrongdoing FCA defendant. This would be the equivalent of contribution or indemnification and is not allowed." *Id.* at 29. The *Miller* defendant claimed that the relator had a contractual obligation to protect it from FCA liability and violated that by pursuing a *qui tam* action. When an FCA defendant's claim explicitly depends on the costs incurred from the FCA case, "then the FCA bars that claim." *Id.*

That is exactly what happened here. The District Court explicitly held that must pay the total amount, but not more, of State Farm's costs and liabilities incurred in the *Qui Tam* Action. In other words, if State Farm incurs no costs in the *Qui Tam*

---

[6] State Farm's reliance on *U.S. ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993) fairs no better. The counterclaims there—likely compulsory as the court noted—were for such wrongs as libel, misappropriation of trade secrets, and the like. Not, full indemnification as State Farm seeks from Angelo.

Action, then it has no damages claim against Angelo. It is hard to imagine how any claim could be more **dependent** than this.

State Farm's remaining cases do nothing but to reiterate the undisputed rule that an FCA defendant may only pursue a truly independent claim against a relator. *See U.S. ex rel. Scott v. Metro. Health Corp.*, 2005 WL 3434830, at *11 (W.D. Mich. Dec. 13, 2005) (allowing a sanctions claim for serious litigation abused); *Chattanooga-Hamilton Cty. Hosp. Auth. v. Xerox Corp.*, 2017 WL 2637745, at *8–9 (E.D. Tenn. June 19, 2017) ("[L]ike the Cell Therapeutics case, . . . since ACS was not the relator in the FCA case, this case does not present the public policy concerns of chilling potential relators from revealing evidence of fraud against the government."); *U.S. ex rel. Salvatore v. Fleming*, 2015 WL 1326330, at *3–4 (W.D. Pa. Feb. 24, 2015) (involving cross-claim against co-defendant, not against the relator).

State Farm argues that the public policy to protect whistleblowers is not implicated here because the FCA does not "immunize a relator for actions taken in pursuance of a *qui tam* action that violate state law." [Dkt. 19 at 47 (quoting *U.S. ex rel. Doe v. X Corp.*, 862 F. Supp. 1502, 1507 (E.D. Va. 1994))]. State Farm also relies on *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062–63 (9th Cir. 2011), which found that "the awarded fees cover [the] successful

contract claim, not [the] FCA claim." But here, the District Court **did** award fees from the FCA claims.

State Farm next argues that ordering a relator to fully indemnify an FCA defendant does not implicate the policy to punish and deter wrongdoing because State Farm separately alleged Angelo of wrongdoing. This argument has been roundly rejected. *See Mortgs., Inc. v. U.S. Dist. Ct. for Dist. of Nev.*, 934 F.2d 209, 213 (9th Cir. 1991) (Even when the relator has "unclean hands" for participating in the fraud, Congress "in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against [relators]."). More confusing still, State Farm asserts that "this Court would have to consider whether federal preemption based on this implied Congressional concern is appropriate at all." [Dkt. 19 at 48]. Angelo has not claimed preemption.

State Farm's response to the "private prosecution" public policy supports Angelo's position. Yes, relators can and often do seek voluntary dismissal of non-intervened cases. And while the Government could decide to intervene in response to a relator who wants to abandon a case, the Government has no ability to force a relator to remain in a case—it must intervene or let it be dismissed. However, it is undisputed that the Government has limited resources, and as this Court has recognized, "there is 'little purpose' to [the] qui tam framework if [the] government is forced to pursue all meritorious claims." *United States v. Health Possibilities,*

*P.S.C.*, 207 F.3d 335, 343 n.6 (6th Cir. 2000). It does not violate public policy for a relator to seek voluntary dismissal because he has lost confidence in the case or cannot shoulder the cost of litigation. However, *in this instance*, Angelo received direct consideration—without Government approval and with none of the consideration flowing to the Government[7]—specifically to seek dismissal[8] of the *Qui Tam* Action, an action the Government cannot practically oppose. Further, requiring Angelo to indemnify State Farm flips the FCA incentives completely on its head. The weight of this burden begs Angelo to work *against* the Government's interests.

While this Court has held that relators are agents of the Government,[9] the District Court's order forces Angelo to turn-cloak and do the bidding of State Farm by "tak[ing] all steps necessary to secure the dismissal" of the *Qui Tam* Action and "undertaking no contrary or inconsistent acts." [R. 149, Page ID # 8081]. This affront to the public policy of the FCA is not mitigated because, as State Farm claims, Angelo received his 30 pieces of silver—*i.e.*, "Angelo voluntarily decided to enter into the Settlement with SFMAIC." [Dkt. 19 at 50]. Therefore, this Court

---

[7] "Moreover, even when the government does not intervene, it nevertheless receives at least seventy percent of any recovery." *Health Possibilities*, 207 F.3d at 340.

[8] Angelo has and continues to maintain that the terms of the Settlement do not encompass the *Qui Tam* Action at all. The District Court's order to the contrary was appealed to this Court and a decision is pending.

[9] *See U.S. ex rel. Holloway v. Heartland Hospice, Inc.,* 960 F.3d 836, 845 (6th Cir. 2020).

should hold that that the interest in enforcing private agreements is outweighed by the harm to public policy by forcing a relator to completely indemnify an FCA defendant for all costs, fees, and liabilities.

## <u>CONCLUSION</u>

Based on the foregoing, Appellant respectfully requests this Honorable Court **REVERSE** the District Court's orders and **REMAND**.

Respectfully submitted,

By: */s/Shereef H. Akeel*
SHEREEF H. AKEEL (P54345)
ADAM S. AKEEL (P81328)
SAMUEL R. SIMKINS (P81210)
EMAD R. HAMADEH (P86840)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
shereef@akeelvalentine.com
adam@akeelvalentine.com
sam@akeelvalentine.com
emad@akeelvalentine.com
*Counsel for Defendant-Appellant*

Dated: March 1, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Appellant certifies pursuant to Fed. R. App. P. 32(g)(1) that the Brief of Appellant complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman font in 14-point size, with footnotes in Times New Roman font, 14-point size.

This Brief contains 5,298 words including footnotes and excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

Respectfully submitted,

By:*/s/ Samuel R. Simkins*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 1st day of March 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Respectfully submitted,

By: *<u>/s/Samuel R. Simkins</u>*